[Crim. No. 2570. In Bank.—November 26, 1923.]

## THE PEOPLE, Respondent, v. AURELIO POMPA, Appellant.

[1] CRIMINAL LAW — MURDER — VIEWING PLACE OF CRIME — DISCRETION.—Under section 1119 of the Penal Code the trial court has a broad discretion in permitting the jury to view the place where an offense is charged to have been committed, and the fact that physical conditions upon or about the premises may have been to any degree altered is a matter to be considered by the court in exercising its discretion, the conclusion on which will not be disturbed on appeal in the absence of a clear showing of abuse.

[2] ID.—TAKING EVIDENCE OUT OF COURT—IRREGULARITIES—MANNER. There is no special sacredness in the atmosphere of a courthouse or the walls or furnishings of a courtroom which requires that sessions of the court shall be held there and not elsewhere, if otherwise the forms of law governing the trial of causes be observed, and the defendant in a prosecution for murder is precluded from objecting to any alleged informalities in the procedure of the trial court during its viewing of the premises, where he and his counsel entirely acquiesced therein and the counsel actively participated in the taking of testimony and receiving evidence by the jury during the inspection of the scene of the homicide.

[3] ID.—RIGHT TO TAKE EVIDENCE AT SCENE OF CRIME.—A jury in viewing premises and having pointed out to them the places which, according to the testimony in the case, the parties occupied therein at the moment of the crime, are receiving evidence, but this is proper if the forms of law are otherwise observed.

[4] ID.—SHOWER OF SCENE OF CRIME—OATH.—Where a shower of the premises appointed by the court in a prosecution for murder was sworn as a witness earlier in the case, he was under oath as such witness in whatever statements he made to the jury in the course of his duties as such shower.

[5] ID.—FAILURE TO SWEAR BAILIFF—IRREGULARITY.—Failure to swear the bailiff in such case is at most an irregularity, which should be objected to at the time.

[6] ID.—APPEAL.—The fact that the bailiff or other officer placed in charge of a jury has not been sworn to the faithful performance of his duty in that particular capacity will not be ground for a

The right to view by jury, notes 18 **Ann. Cas.** 730; 42 **L. R. A.** 368.

reversal in the absence of a showing that the unsworn officer has not faithfully performed his duties in that capacity.

[7] ID.—MISCONDUCT—STATEMENT ON IRRELEVANT MATTER BY JUDGE. What the court may have incidentally stated concerning a matter upon which he was not required at the time to make a ruling in a trial for murder might possibly be misconduct, but could not be taken advantage of as an error of law.

[8] ID.—CROSS-EXAMINATION—CONTRADICTORY STATEMENTS—EXPLANATION.—Where a comparison of alleged contradictory statements made by a defendant's witness in such a case shows that the witness' explanation, made at the time of the second statement on cross-examination, was all the explanation the situation required, since his latter statement clarified but did not contradict the former statement, defendant was in no way prejudiced by the fact that a fuller explanation was not given at the time the statement was made or called for later in the witness' examination.

APPEAL from a judgment of the Superior Court of Los Angeles County. Russ Avery, Judge. Affirmed.

The facts are stated in the opinion of the court.

Frank E. Dominguez and W. T. Helms for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

RICHARDS, J., *pro tem.*—The defendant herein was convicted of murder in the first degree, consisting in the killing of one Wm. D. McCue on October 19, 1922, in a building in the city of Los Angeles intended for a postoffice, then in course of construction, and in which the deceased and the defendant were at the time of said homicide employed. Upon this appeal the defendant does not contend that the evidence in the case was insufficient to justify the verdict of conviction, but rests his demand for a reversal upon three points, which are: (1) That the jury received evidence outside of court other than that resulting from a view of the premises; (2) that the court misdirected the jury in matters of law arising during the course of the trial; (3) that the verdict is contrary to law.

The first of the foregoing contentions is predicated upon the action of the trial court in permitting a view of the premises where the homicide occurred and upon what trans-

pired during the course of that particular proceeding. The facts leading up to and attending the view of the premises by the jury are undisputed and are these: At an early stage in the trial the district attorney moved the court that the jury be taken to the scene of the crime. The defendant's counsel objected to this procedure upon the ground that the physical features of the building had changed through its completion, and on the further ground that since the defendant had introduced no evidence the motion was premature. The court at that time reserved its ruling on the motion until after the evidence was closed, but at a later stage of the trial, when the prosecution had closed and when all of the defendant's witnesses, except himself and one Joe Leon, had been fully examined and when the cross-examination of the witness Leon was in progress, the district attorney, apparently becoming impatient at the witness' lack of understanding of the plat of the premises, which was being used as an exhibit in the case, renewed his motion that the jury be taken to view the premises. To this defendant's counsel offered no objection, whereupon the court proceeded to direct the bailiff to make arrangements for conveyance on the following morning of the jurors, the respective counsel, the judge, the clerk, the interpreter, and the defendant to the scene. The court also directed that one Elmer Long, who had been the chief witness offered by the prosecution as to the facts preceding and attending the homicide, also attend for the purpose chiefly of showing and explaining to the jury the state of the building as it was in its incompleted condition on the date of the tragedy, and the location of the parties to the crime in relation thereto at the time of its commission, and where the deceased fell. To these directions the defendant's counsel offered no objection and even went so far in his concurrence therein as to suggest that the exhibit may be taken along. The court replied: "That will be done. Now, I will say for the benefit of the jury, that there will be no argument and no taking of testimony while there; and the Court must designate someone to point out the particular things; and if there should be any other objects down there, physical objects that the jury desire to have pointed out, bring it to the attention of the court, who will take it up with counsel, and probably the counsel will stipulate that the question

either is or is not a proper question; and if it is a proper question, by stipulation it can be also asked of Mr. Long to point out.'' ''Mr. Hopkins: It might be well, if I might suggest, that the jurors also have in mind that pointing this out is not evidence.'' ''The Court: No; the only purpose of this visit is to give the jury a better understanding of the location where the witnesses have testified various things happened, so that the jury may understand the testimony of the witnesses with reference to the physical facts, as they existed, on the 19th of October.'' On the following morning the court, including the bailiff and clerk, the jury, the defendant, the interpreter, the respective counsel and the selected shower, repaired to the scene of the crime, whereupon the court directed Mr. Long ''to proceed to explain the various points to the jury as suggested by the court yesterday.'' This the latter proceeded to do, beginning at the outside of the building, indicating its exits and entrances as they were on the date of the homicide, and thence entering the building and explaining the changes that had occurred in its interior at or about the immediate spot where the shooting had taken place. In so doing he was frequently assisted by questions put to him by the judge of the court, which had the effect of clarifying his explanations. Certain of the jurors also asked questions having the same object and effect. To this procedure the defendant's counsel offered no objection at the time but, on the contrary, expressly assented thereto, only objecting once or twice during the entire course of the proceedings when one or other of the jurors asked a question which went to the immediate occurrence of the crime itself, as, for example, a juror asked this question: ''How far was the defendant when he shot McCue?'' to which the court promptly sustained the objection. Again, just as the tour of inspection was closing, a juror, referring to a certain opening in the wall, asked: ''Was it open all the time for the workmen to get their tools?'' to which Mr. Long replied: ''We had a man there to take care of the tools.'' ''The Court: Any objection to that question and answer?'' ''Mr. Hopkins: Yes, we object to all this evidence''; to which the court replied: ''The question and answer stricken out as not being part of the physical part.'' We cite these instances to show the extent of the defendant's concurrence in the proceedings

which actually took place at the scene of the homicide, at the close of which the court, giving its usual admonition to the jury, took a recess until the afternoon. When the court reassembled at its courtroom in the afternoon, counsel for the defendant announced that he intended to formulate a number of objections to what took place during the course of the inspection when the transcript of the proceedings was written up. The trial then proceeded with the further cross-examination of the witness Leon and with the taking of the defendant's testimony. At the close of the defendant's case his counsel presented his foreshadowed objections to the proceedings had in relation to and during the viewing of the scene of the crime. These embraced an objection to any view at all upon the ground that it was not required by the state of the evidence in the case and was not conducted in the manner agreed upon at the time of the court's order directing the view, and on the further ground that the conditions of the postoffice building had been so far changed as to render improper the order for their inspection, and on the further ground that the jury had not been placed in charge of any official in the manner required by law, and on the further ground that the shower had not been confined to his duties as a shower in a legal or lawful manner, and on the further ground that the taking of testimony, both mute, demonstrative, verbal, and by actions and conduct, was permitted; that the taking of such testimony was out of court and was not given by any witness or by anyone sworn to give testimony; that the court did not charge the jury before going to view the *locus in quo* as to their duties not to communicate with each other, and other duties as required by law; that persons other than the shower were allowed to and did speak and converse on the subject of the trial in the presence of the jury; that the jurors discussed the case as between themselves at the time of this showing and that the jurors discussed the case out of the presence of each other; that the jurors were allowed to and did separate and were not kept in hearing of each other and the hearing and sight of the shower; that the trial judge commented on the evidence in the presence of the jury, and that comments were made by the shower, by the court and by other persons while the jurors were not all together and within sight and hearing.

The defendant's counsel further objected to the selection of Mr. Long as the shower upon the ground that he was not the best qualified person to be selected for such duty, and on the further ground that he was one of the principal witnesses for the prosecution. In support of these various objections there was no other evidence proffered except the reporter's transcript of the proceedings during the view and it will be obvious that as to some of the aforesaid objections the reporter's transcript would shed no light upon them. The court, in passing upon said objections, stated:

"Section 1119 of the Penal Code of the State of California provides as follows (reading): 'View of premises, when ordered and how conducted. When, in the opinion of the Court, it is proper that the jury should view the place in which the offense is charged to have been committed, or in which any material fact occurred, it may order the jury to be conducted in a body, in the custody of the Sheriff to the place, which must be shown to them by a person appointed by the Court for that purpose; and the Sheriff must be sworn to suffer no person to speak or communicate with the jury, or to do so himself, on any subject connected with the trial, and to return them into court without unnecessary delay or at a specified time.'

"Now, the District Attorney made a motion in the first instance, to have the jury see the premises, and the Court took the matter under advisement. I think the Court denied the viewing of the premises at that time. Later the motion was again called to the attention of the Court, and from certain expressions that were made in court, certain evidence taken, it became clear to the Court, and the Court then formed an opinion, that it was at that time, and the Court now thinks that it was proper that the jury should view the premises in which the offense is charged to have been committed.

"The Court did order the jury to go to the place in the custody of the Sheriff. The jury was admonished before the jury left the courtroom not to discuss the case amongst themselves, or with anyone else, or to suffer anyone else to approach them on the subject of the case, or to form or express any opinion on the cause until the cause should be finally submitted to them. The jury then was conducted to the place in question, being the place in which the offense

192 Cal.—27

was alleged to have been committed, otherwise known as
the Postoffice Building at Third and Central Avenue, City
of Los Angeles, County of Los Angeles, State of California;
and the Sheriff, or Deputy Sheriff, was directed to conduct
them to that place; and the Deputy Sheriff who conducted
them to the place to the observation of this Judge, was very
careful to keep the jury in a body; and the Court observed
that the Deputy Sheriff so in charge of the jury did order
other people away from the jury—he did that upon several
occasions—so that the Court now finds as a fact that the
Deputy Sheriff in charge of the jury did keep the jury to-
gether in a body, in so far as that was humanly possible
for twelve people to be kept in a body when they move from
one place to another, walking around; but the Court finds
no one discussed the case with the jury at that time, and
no one was given an opportunity to discuss the case with
the jury; and the Court did not observe that the jury, or
the jurors, were discussing the facts among themselves; and,
so far as the Court was able to observe that the jurors did
in fact and in good faith obey the admonitions heretofore
given them on that occasion, and that there was no miscon-
duct on the part of the jury, or the jurors, or, so far as
that matter has been brought to the attention of this Court,
by any counsel in the case.

"The Deputy Sheriff who accompanied the jury has been
Bailiff in this courtroom for a long time and is a thoroughly
trusted officer who knows his business, and, so far as this
Court knows, performed his duty in the usual excellent
manner that he has always done, in this instance, and as
he has been accustomed to do upon numerous occasions.

"The person selected by the Court to point out the place
in which the offense charged to have been committed, or in
which any other material fact occurred, was a witness in
this cause, had worked for the Construction Company in the
construction of the buildings; had shown by his evidence
under oath that he knew the condition of the buildings at
the time of the occurrence of the offense charged to have
been committed; he was there in the building at that time;
his recollection was at least reasonably accurate on the wit-
ness-stand here as to the condition then, as compared with
the condition now; and in the opinion of the Court, Elmer
Long, so appointed by the Court, was the best person that

the Court knew to be appointed.for the purpose, and who could most faithfully and accurately point out the place and the physical objects as they existed on the 19th of October, 1922.

"So far as certain questions being asked by the Court, those questions were asked for the purpose of drawing out more particularly the attention of the person, Elmer Long, who was appointed to show the place, so that the accuracy of the conditions could be pointed out in the building as they existed on the 19th of October, 1922.

"The Court finds that the conditions had not changed to such a material extent as that the same could not be pointed out with accuracy as to the actual conditions as they existed on the 19th of October, 1922. In other words, that the conditions are not changed to such an extent as to make the viewing of the premises unwarrantable or improper.

"The jury did not separate while they were in the conduct of the Sheriff or the Deputy Sheriff. So far as the jury is concerned, and so far as the Deputy Sheriff is concerned, I think that everything was properly done.

"The objections as made specifically are overruled."

After the trial court had thus made its ruling, the defendants' counsel undertook to point out specific portions of the transcript of said proceedings which he claimed supported his objections, and also undertook to point out portions of the statements made by the shower which were in the nature of evidence which, according to his contention, could not properly be taken in the course of the viewing of the premises provided for by law. The court, however, adhered to its former ruling and overruled each and all of the defendant's said objections. In so doing, and in answer to a statement made by the defendant's counsel that he had not been given an opportunity to cross-examine Mr. Long during the view, the court stated that it would give defendant's counsel the opportunity to call Mr. Long to the stand and to interrogate him as to anything pointed out by him, any remark made by him, or any statement made by him in answer to any question which was there propounded, either by the court, or by the prosecution, or by the counsel for the defendant, or by any juror. The defendant's counsel declined to avail himself of this oppor-

tunity and stood upon his objections. The trial then proceeded to its close, resulting in a verdict finding the defendant guilty of murder in the first degree. Upon his motion for a new trial the defendant's counsel again presented his objections to the proceedings and occurrences preceding and attending the view of the premises, basing his motion for a new trial thereon and presenting only the reporter's transcript of the case in support thereof. The court denied said motion for a new trial, whereupon the defendant took an oral appeal from the judgment in open court and also filed with the clerk a written notice of appeal from the judgment. He did not in either form of appeal specify that he also appealed from the order denying a new trial, but in his written application to the clerk for a transcript, filed with his said written notice of appeal, he set forth the grounds of his appeal, one of which was the alleged error of the court in denying the defendant's motion for a new trial. The transcript on appeal contains the entire record of all of the proceedings in the case, including those had upon the view of the premises, together with the defendant's later specific objections to the sufficiency and legality of such proceedings. Upon the hearing upon this appeal the respondent has presented an objection to the consideration by this court of the propriety or correctness of the action of the trial court in ordering and conducting the proceedings during which the view of the scene of the homicide was had, for the reason that those were matters which were properly presentable only upon motion for a new trial and were only reviewable upon an appeal from the order denying a new trial, which appeal, the respondent contends, this appellant has not taken. Upon this appeal the entire record in the case is before this court, and since it appears from the papers contemporaneously filed with the clerk of the trial court at the time of the appeal from the judgment that the appellant desired and intended to have the alleged errors of the trial court in the respect above indicated and in its denial of his motion for a new trial included within said record and presented to this court for review upon this appeal, we are not disposed to deny him that opportunity, since this court has said in *People* v. *Durrant*, 116 Cal. 217 [48 Pac. 85], that "in cases of capital crime the law is reluctant to deny a defendant a full con-

sideration of his points because of technical errors or omissions of his counsel upon whom he must rely.''

[1]    We are thus brought to a consideration of the merits of the appellant's first contention, viz., that the jury received evidence out of court other than that resulting from a view of the premises. Under this heading the appellant undertakes to discuss in his brief the propriety of the making of any order by the trial court providing for a view of the premises in question, in view of the circumstances of the case, and particularly of the fact that the physical features of the premises where the homicide occurred had been materially changed by the completion of the building since the date of the tragedy. This point requires but brief discussion in view of the broad discretion with which trial courts are invested under the terms of section 1119 of the Penal Code with respect to permitting the jury to view the place where an offense is charged to have been committed. The fact that physical conditions upon or about the premises may have been to any degree altered is a fact to be considered by the trial court in exercising its discretion to permit or refuse to permit such view and its conclusion in that regard will not be disturbed upon appeal in the absence of a clear showing of an abuse of such discretion. No such abuse of discretion is disclosed by the record in this case.

[2]    The appellant next contends that the trial court in its direction for the view of the premises and in its instruction to the selected shower as to the specific duties he was to perform limited the proceedings during such view strictly to an inspection of the premises during the course of which no testimony of any kind was to be taken; but that during said proceedings and while upon said premises these limitations were transgressed and considerable important evidence was presented to the jury out of court. It is true that at the outset of said proceedings the trial court did attempt to restrict them to certain specific limits embodied in its instructions to the shower selected by it; and it is also true that when the court, the jury, the defendant, the shower, together with the court attachés and the counsel for the respective parties reached the premises to be thus viewed the procedure there was much broader than its earlier limitations imposed by the court and that considerable testimony was taken and evidence received by the jury

upon the scene of the alleged crime. But the record expressly discloses that during the entire proceedings attending and embracing the view of the premises the court in its completeness, including the judge, the clerk, the bailiff, the reporter, the interpreter, the jury, the defendant, and the respective counsel was at all times present, the only element absent being the walls and fittings of the courtroom wherein the court is usually convened. There is no special sacredness in the atmosphere of a courthouse or the walls or furnishings of a courtroom which requires that sessions of the court shall be held there and not elsewhere, if otherwise the forms of law governing the trial of causes are observed, which appears to have been done, though with some absence of formality, in the instant case (*Block* v. *Kearney,* 6 Cal. Unrep. 660 [64 Pac. 267]) ; but aside from this we think that the defendant is precluded from objecting to any of the alleged informalities in the procedure of the trial court during its view of the premises in question by the fact of the entire acquiescence of himself and the acquiescence and even active participation of his counsel in the taking of testimony and receiving of evidence by the jury during the inspection of the scene of the homicide. If the defendant or his counsel had any objection to the shower appointed by the court such objection should have been made at the time of his designation, and when not so made must be held to have been waived. If the defendant had any objection to make to the action of the trial judge in putting certain questions to the shower intended to clarify and expedite the proceedings they should have been made at the time, and this was evidently understood by defendant's counsel, since he did in fact object to certain questions asked the shower by the court or by a juror which were promptly sustained by the court. So, also, as to every other alleged irregularity in the proceedings which the defendant's counsel undertook to take advantage of after the proceedings during the view of the premises were concluded and at a later session of the court. All of these we hold to have been waived by the defendant's failure to object and concurrence in their commission at the time. (*People* v. *Fitzgerald,* 137 Cal. 546 [70 Pac. 554] ; *People* v. *Rolfe,* 61 Cal. 542; *People* v. *Tarm Poi,* 86 Cal. 225 [24 Pac. 998].) As to certain of these asserted irregularities the record fails to disclose their ex-

istence and the defendant not only did not support his claim of their occurrence upon his belated objection or upon his motion for a new trial, but the trial court, in ruling upon the defendant's said objections on both occasions, expressly negatived their presence during the proceedings as matter lying within the observation and knowledge of the court at the time.   There are, however, one or two matters embraced in the appellant's objection to the regularity of the proceedings of the trial court upon the view of the premises in question which would seem to require a more particular consideration.   At the conclusion of the proceedings at the scene of the crime the defendant's counsel, in response to an inquiry by the court, said: "We object to all this evidence."   [3]  This general objection then made forms the basis for the appellant's present contention that the statutory proceedings for a view of premises where an offense is alleged to have been committed is so limited in its scope as to preclude the reception by the jury of any evidence during such view.   This conception of the scope of such proceeding is an erroneous one based upon certain expressions of this court in the early cases of *Wright* v. *Carpenter,* 49 Cal. 607, and *People* v. *Green,* 53 Cal. 60, wherein proceedings upon a view of premises were very strictly limited, both as to procedure and effect; but this court in the later cases of *People* v. *Bush,* 68 Cal. 623 [10 Pac. 169], and *People* v. *Milner,* 122 Cal. 171 [54 Pac. 833], overruled so much of these earlier cases as appeared to hold that evidence could not be received by the jury in the course of a view of the scene of an alleged offense, the court holding that a jury in viewing premises and having pointed out to them the places which, according to the testimony in the case, the parties occupied therein at the moment of the crime, were receiving evidence and might properly do so if the forms of law were otherwise being observed.   There is one further point urged by the appellant under this head which might be disposed of before passing to the other points in the case.   It is that at the time the jury went to the scene of the alleged crime the bailiff in whose charge the jury were placed by the court for the purpose of being taken to the premises for the view and thereafter returned to the court had not been sworn,

and also that the shower had not been sworn. **[4]** As to the latter the point has no merit, since the record shows that the person selected as shower had been sworn as a witness in an earlier stage of the case and hence was under oath as such witness in whatever statements he made to the jury in the course of his duties as such shower. **[5]** As to the omission of the court to swear the bailiff it was at most an irregularity which should have been objected to at the time. (*Ball* v. *United States,* 163 U. S. 662 [41 L. Ed. 300, 16 Sup. Ct. Rep. 1192, see, also, Rose's U. S. Notes]; *State* v. *Crilly,* 69 Kan. 802 [77 Pac. 701]; *Knouff* v. *People,* 6 Ill. App. 155.) **[6]** But beyond this it has been held that the fact that the bailiff or other officer placed in charge of a jury has not been sworn to the faithful performance of his duty in that particular capacity will not be ground for a reversal in the absence of a showing that the unsworn officer has not faithfully performed his duties in that capacity. (*Wilson* v. *State,* 15 Ga. App. 632 [84 S. E. 81]; *State* v. *Crilly, supra.*)

The next contention of the appellant is that the court misdirected the jury in matters of law arising during the course of the trial. The first matter referred to under this head relates to an episode during the cross-examination of the defendant during which the district attorney sought to question him as to a statement regarding the shooting of the deceased made by the defendant at the coroner's inquest. The record, however, discloses that after repeated efforts on the part of the district attorney to examine the defendant as to such statement, as the same was embodied in a stenographic report of the proceedings at the inquest, he failed in that effort for the reason that the interpreter at the inquest was shown by said report to have incorrectly reported what the defendant actually said on that occasion. The appellant does not here contend that the trial court did not correctly rule in excluding such evidence, but complains that the court in so ruling intimated that the statement then made by the defendant would have been admissible if the interpreter could have been produced to testify as to what the defendant did then say. This objection is too remote. **[7]** What the court may have incidentally stated concerning a matter upon which he was not required at the

time to make a ruling might possibly be misconduct, but could not be taken advantage of as an error of law. Besides, no injury is shown to have resulted to the defendant, since whatever the statement the defendant may have made at the coroner's inquest did not get before the jury at any time during the trial of the cause on account of the absence of the interpreter which prevented the proper foundation for its admission being laid.

[8] The next error of law which the appellant alleges to have been committed by the trial court occurred during the cross-examination of Elmer Ballou, one of the defendant's witnesses. Ballou was being asked for the purpose of impeachment as to certain testimony given by him upon the preliminary examination. The district attorney read from the transcript the matter to which the witness there testified and then asked the witness the question: "Did you so testify?" to which the witness replied, "I did." He was then asked: "Which was the truth?" His answer was: "That was the truth but it was not as clear," and he· further said, "I am telling the truth both times"; whereupon one of the defendant's counsel said: "If the court please, at this time I request that the witness be permitted to explain." The court replied: "He will be given an opportunity later." The record shows that the examination of the witness proceeded for some time thereafter and that counsel for the appellant had the opportunity of having his witness make any explanation he desired as to any apparent discrepancy in his two statements but did not avail himself of it. A comparison of the two statements of the witness, as given in the record, shows that the witness' explanation made at the time was all the explanation the situation required, since his statement on the trial clarified but did not contradict his testimony given upon the preliminary hearing. The defendant was, therefore, in no way prejudiced by the fact that a fuller explanation was not given at the time or called for later in the witness' examination.

The final contention of the appellant is that the verdict of the jury is contrary to law. Under this heading he merely repeats his insistence upon the former alleged errors of the trial court, which have already been discussed and determined. We are satisfied from a careful consideration of

the whole record in this case that no error has been committed which would justify a reversal.

The judgment is affirmed.

Wilbur, C. J., Waste, J., Kerrigan, J., Myers, J., Lawlor, J., and Seawell, J., concurred.

Rehearing denied.

All the Justices concurred.