[Civ. No. 21190.   Second Dist., Div. One.   Mar. 12, 1956.]

MARGARET MURPHY, as Administratrix, etc., et al., Appellants, v. ATCHISON, TOPEKA AND SANTA FE RAILWAY (a Corporation) et al., Respondents.

John H. Carter, Melvin M. Belli, Ben C. Cohen and Alfred Lubin for Appellants.

Richard L. Oliver, Pollock & Pollock, Hirson & Horn, Herbert Resner, John M. Ennis. Irving H. Green and Henry A. Plattner, as Amici Curiae on behalf of Appellants.

Robert W. Walker and J. H. Cummins for Respondents.

FOURT, J.—This is an action for wrongful death brought by appellants against respondents. At the conclusion of appellants' case respondents made a motion for a nonsuit which was denied without prejudice. At the conclusion of the entire case respondents renewed their motion for a nonsuit and made a further motion for a directed verdict. The court denied the motion for a directed verdict and granted the motion for a nonsuit on the ground that the decedent was, as a matter of law, guilty of contributory negligence. This appeal followed.

The fatal accident occurred in broad daylight at a point where Phelan Road crosses the railroad tracks in the small town of Hesperia, which is located about 9 miles from Victorville in San Bernardino County, California. The respondent company operates and maintains its railroad tracks through the town of Hesperia, running in a general northerly and southerly direction. At Phelan Road there is a double set of tracks. The grade of Phelan Road, going west, was 4 per cent ascending; the railroad grade toward the south was 1 per cent ascending. Crossarm signs and a highway stop sign were constructed on each side of the tracks.

The decedent, who was traveling in a westerly direction on Phelan Road, was driving a Sterling tractor, pulling a Fruehauf trailer, silver in color. The top of the cab was 8 feet above the ground. The trailer was 35 feet long, made of stainless steel. The top of the trailer was 12¾ feet from the ground.

As the decedent approached the east set of tracks at Phelan Road, a freight train operated by the respondents was traveling on the easterly set of tracks in a southerly direction. The freight train was about a mile long and was traveling approximately 15 to 20 miles per hour. The decedent brought his truck to a stop 6 to 12 feet from the easterly set of tracks and waited for the freight train to pass. When the rear car, or caboose, of the freight train cleared the crossing an eastbound automobile, driven by Edward M. Floyd, crossed the tracks. The decedent started to proceed across the tracks at a speed of about 5 to 10 miles per hour. Floyd testified that as he started to cross the tracks he saw respondents' passenger train approaching from the south, going in a northerly direction on the westerly set of tracks, about 350 feet from the crossing, at a speed of approximately 80 miles per hour; that he heard no whistle or bell; that the freight

train made considerable noise. The Floyd car was about 150 feet east of the tracks when the accident occurred.

Johnny Howell, a witness, traveling in a westerly direction, brought his automobile to a stop behind the decedent's truck. He testified that the passenger train first came into his line of vision when both the caboose of the freight train and the front end of the passenger train were 100 to 150 feet south of the crossing. Howell, Floyd and two other witnesses testified that prior to that time they did not hear any whistle, bell or other warning signal coming from the passenger train.

The truck of the decedent proceeded onto and across the westerly set of tracks. The front of the passenger train hit the back dual wheels of the tractor and the front end of the trailer and continued northerly for a distance of about a half mile before coming to a stop. After the train and the truck came to a stop, decedent was lying in front of his truck; he was dead at that time. The truck was traveling about 5 to 10 miles per hour when it was struck. The passenger train was traveling on the left set of the double tracks, known in railroading as "left hand running." The passenger train did not reduce its speed at any time before the impact. The engineer testified that he was traveling downgrade at about 80 miles per hour; that his train was about 200 to 250 feet from the crossing when the engine passed the caboose of the freight train. The engineer was familiar with the Phelan Road crossing and knew that the town of Hesperia was to his left. He stated that he first saw the decedent's truck when his engine was about 750 feet from the crossing. He had an uninterrupted view after the caboose passed the engine of the passenger train.

Alexander Wood, a model engineer, stated that the passenger locomotive was a three-unit diesel and that the seat of the engineer would be 9 feet from the rail head. Using a model which he had constructed to scale, he testified that the maximum distance that a truck driver could see south on the northbound track, where his truck was on the east rail of the southbound track, was 110 feet. Putting the caboose at a point 40 feet south of the crossing and placing the tractor in a position where its front was on the second rail of the east tracks, the maximum distance that a driver of a tractor could see south on the track and on to any portion of the northbound track, was 100 feet. Putting the caboose just

clearing the crossing and the front of the tractor 10 feet from the east rail, a truck driver would not have any range of vision of any portion of the northbound track. The caboose would have to be at least 30 feet down the track for the truck driver to have any range of vision along the northbound track.

Witnesses testified that within six months to a year before the accident of July 22, 1952, they had observed trains going in one direction on one track and passing another train going in the opposite direction on another track at the Phelan Road crossing. In the fall of 1951, Floyd and his brother made a vehicular check of the vehicles crossing Phelan Road crossing from 9 a. m. to 12 noon on a Saturday, and counted 300 vehicles.

Appellants contend that the trial court erred in finding that decedent was guilty of contributory negligence as a matter of law and in granting the motion for nonsuit.

■ It is the rule that a motion for nonsuit at the close of plaintiff's case must be denied if there is any substantial evidence which, with the aid of all legitimate inferences favorable to the plaintiff, tends to establish the averments of the complaint, that is to say, where the plaintiff's evidence is sufficient to support a judgment on the verdict. ■ This is the rule even though there is a conflict in the evidence and some of it tends to sustain the plaintiff's case, or different conclusions can reasonably be drawn from the evidence of the plaintiff. (*Kirk* v. *Los Angeles Ry. Corp.*, 26 Cal.2d 833, 837 [161 P.2d 673, 164 A.L.R. 1]; *Sunset Milling & Grain Co.* v. *Anderson*, 39 Cal.2d 773, 779 [249 P.2d 24].)

■ On an appeal from a judgment of nonsuit an appellate court must view the evidence in the light most favorable to appellant, disregarding all inconsistencies and drawing only those inferences from the evidence which can reasonably be drawn which are favorable to appellant. (*Kirk* v. *Los Angeles Ry. Corp.*, supra, pp. 837-838; *Merlino* v. *Southern Pac. Co.*, 132 Cal.App.2d 58, 60 [281 P.2d 583].)

Respondents do not question that it was established there was negligence on the part of the railroad. They state in their brief that "[s]olely for the purposes of respondents' brief, negligence is admitted," and concede that the sole question for determination is whether as a matter of law decedent's negligence was a contributing cause of the accident.

■ With respect to the question of contributory negligence, the rule was aptly stated in *Anthony* v. *Hobbie*, 25

Cal.2d 814, 818 [155 P.2d 826], and quoted with approval in *Kirk* v. *Los Angeles Ry. Corp., supra,* 26 Cal.2d 833, 838, and *Merlino* v. *Southern Pac. Co., supra,* 132 Cal.2d 58, 67, thus: "The burden of proving contributory negligence is upon the defendant. (19 Cal.Jur. 697-699.) True, contributory negligence may be found by the trier of fact from the plaintiffs' own evidence. But cases in which it can be said that the negligence of plaintiff contributes proximately to the accident as a matter of law are rare. ■ The rule has been stated in various ways in a legion of cases, that contributory negligence is not established as a matter of law unless the only reasonable hypothesis is that such negligence exists; that reasonable or sensible men could have drawn that conclusion and none other; that where there are different inferences that may be drawn, one for and one against, the one against will be followed; and that before it can be held as a matter of law that contributory negligence exists, the evidence must point unerringly to that conclusion. (Citing cases.)" (See also *Herbert* v. *Southern Pac. Co.,* 121 Cal. 227, 229 [53 P. 651].)

■ It is also the rule that where there is evidence that the driver has exercised some care, the question whether the care exercised was sufficient is a matter for determination by the jury. (*Koch* v. *Southern Calif. Ry. Co.,* 148 Cal. 677, 680 [84 P. 176, 113 Am.St.Rep. 332, 7 Ann.Cas. 795, 4 L.R.A. N.S. 521]; *Startup* v. *Pacific Elec. Ry. Co.,* 29 Cal.2d 866, 871 [180 P.2d 896]; *Lloyd* v. *Southern Pac. Co.,* 111 Cal. App.2d 626, 635 [245 P.2d 583]; *Merlino* v. *Southern Pac. Co., supra,* p. 69.)

■ Applying the foregoing rules to the instant case, we are of the opinion that the trial court erred in granting the motion for nonsuit and that the question of decedent's contributory negligence should have been submitted to the jury. The evidence is uncontradicted that decedent brought his truck to a complete stop 6 to 12 feet from the easterly set of tracks. The engineer of the passenger train saw the decedent's truck 750 feet from the crossing. The train was traveling 80 miles an hour and did not reduce its speed prior to the collision. Four witnesses testified that either there was no bell, whistle or horn sounded by the passenger train, or that they heard no such bell, whistle or horn. When the caboose of the freight train had cleared the track Floyd, who was waiting at the westerly tracks for the freight train to

pass and had an unimpeded view of the westerly tracks, drove his automobile across the tracks. Clearly it was a question of fact for the jury to determine whether decedent, under the circumstances existing at the time, took the precautions which the situation demanded for his own protection.

The judgment is reversed.

Doran, Acting P. J., concurred.