[Civ. No. 22916.   Second Dist., Div. Two.   Aug. 18, 1958.]

ELEANOR MURPHY, as Special Administratrix, etc., Appellant, v. THE ATCHISON, TOPEKA AND SANTA FE RAILWAY (a Corporation) et al., Respondents.

Melvin M. Belli, Ben C. Cohen and Alfred Lubin for Appellant.

Robert W. Walker and J. H. Cummins for Respondents.

HERNDON, J.—Plaintiff administratrix appeals from a judgment in favor of defendants entered upon a jury verdict in a wrongful death action. The decedent was killed when a passenger train operated by defendant Santa Fe collided with his truck at a grade crossing. Plaintiff advances as her sole assignment of error the refusal of the trial court to instruct the jury that her decedent was presumed to have exercised due care for his own safety. Defendants justify the refusal of the requested instruction on the basis of their contention that the testimony given by plaintiff's witnesses was wholly irreconcilable with the presumption sought to be invoked. No other question is raised concerning the form or content of the instruction as requested.

The instant judgment was entered at the conclusion of the second trial of the case. The first trial ended with a judgment of nonsuit, which was granted upon the ground that plaintiff's evidence established decedent's contributory negligence as a matter of law. The nonsuit was reversed by Division One of this court in *Murphy* v. *Atchison, Topeka & Santa Fe Ry.*, 139 Cal.App.2d 792 [294 P.2d 458]. Upon retrial, as we have indicated, the jury rendered a verdict for the defendants and judgment was entered accordingly.

It is undisputed that plaintiff's evidence at the first and second trials was substantially the same. Plaintiff called the same four witnesses and, with relatively minor variations, their testimony, as set forth in the opinion rendered in the former appeal, was repeated at the second trial. Therefore, we limit our present statement of the facts to a general summary referring to the above cited opinion for a more detailed exposition of the evidence.

At about 4 p.m. on July 22, 1952, Frank J. Murphy, the decedent, was proceeding in a westerly direction on Phelan Road in the town of Hesperia, California, driving an eighteen-wheel tractor and trailer which, with its load of potatoes, weighed about 35 tons. The over-all length of the equipment was 52 feet. When he approached the double mainline tracks of the railroad, which cross Phelan Road at right angles, the crossing was blocked by a long freight train traveling in a southerly direction at a speed of 15 to 20 miles per hour on the easterly set of tracks.

Decedent brought his truck to a stop 6 to 12 feet from the easterly set of tracks and waited for the freight train to pass. As the caboose of the southbound freight train cleared the crossing, decedent started his truck forward and on to the railroad tracks. A northbound passenger train traveling approximately 80 miles per hour on the westerly set of tracks collided with the truck amidships and the fatality was instant. There is evidence that the truck had attained a speed of 5 to 10 miles per hour when it was struck.

Except for some conflict as to whether or not the passenger train signalled its approach to the crossing by its horn or whistle, the testimony of all of the several eyewitnesses was essentially consistent and undisputed. Plaintiff's witness Floyd, traveling in an easterly direction on Phelan Road in his 1950 Chevrolet, approached the railroad crossing from the side opposite decedent. As he waited for the freight train to clear, Floyd observed decedent's truck come to a stop on the other side. Floyd proceeded to cross the tracks as soon as the caboose cleared, and as he did so he saw the passenger train approaching from his right at a distance of about 350 feet from the crossing. He also saw decedent's truck moving forward as he was passing over the tracks. He continued to watch decedent's truck through his rear view mirror. Floyd had attained a speed of about 40 miles per hour and had traveled about 150 feet when the collision occurred.

Plaintiff called two other eyewitnesses, both of whom were

well positioned to observe the tragedy from different angles. The witness Howell had stopped his car directly behind decedent's truck and saw the truck move forward the instant the caboose cleared the crossing. As stated above, the testimony of the several eyewitnesses as to the conduct of the decedent, the movements, speeds and relative positions of the truck and of the two trains was essentially consistent and without substantial conflict. In other words, the accident was described by testimony which was unusually clear, consistent, and satisfactory, the only point of conflict relating to the question whether the passenger train sounded its horn as it approached the crossing.

Both sides to this appeal point to and rely upon the unchallenged testimony of a model engineer who demonstrated by means of models constructed to scale the maximum distances that decedent could see to the south on the westerly or northbound track when the truck and the caboose were placed at various assumed positions. Plaintiff summarizes the substance of this testimony as follows: ''By a manipulation of the models he demonstrated that when the bumper of the decedent's truck was on the first east rail, and the caboose of the freight train had just cleared Phelan Road and the 'Chief' was down about 140 feet from the crossing, that the driver of the truck would have no vision of the oncoming 'Chief.' But when the front bumper of the truck is on the second west rail and the 'Chief' is 140 feet away, the 'Chief' then comes into vision from the truck driver's seat. With the bumper of the truck on the second east rail, and moving the caboose of the freight train 50 feet south of the crossing with the 'Chief' still at 140 feet south of the crossing, the line of vision would still be obscured from the driver's seat of the truck. The 'Chief' would have to be approximately 135 feet from the crossing before the driver of the truck could see it with the rig having its front bumper on rail Number 3 or the second east rail with the caboose at approximately 50 feet down the track. At 80 miles an hour the 'Chief' would be traveling 120 feet a second so that it would be a matter of a little over one second from the time the 'Chief' first came into view of the decedent until the time of the impact.''

The applicable test by which it is to be determined whether the presumption in question may be invoked in such circumstances is stated as follows in *Gigliotti* v. *Nunes*, 45 Cal. 2d 85, 93 [286 P.2d 809]: ''Although there is no room for the presumption where the driver or other person whose

claimed negligence is at issue himself testifies to his actions at the time involved (see *Speck* v. *Sarver* (1942), 20 Cal.2d 585, 587-588 [128 P.2d 16]), the rule is established that if such person be deceased or unable to testify by reason of loss of memory, the fact that other witnesses for the parties testify fully as to the acts and conduct of the allegedly negligent person does not deprive the party relying on the presumption of the benefit thereof unless the testimony which he himself produces 'under circumstances which afford no indication that the testimony is the product of mistake or inadvertence . . . is wholly irreconcilable with the presumption sought to be invoked.' (*Westberg* v. *Willde* (1939), 14 Cal.2d 360, 365-368 [94 P.2d 590]; *Mar Shee* v. *Maryland Assur. Corp.* (1922), 190 Cal. 1, 9 [210 P. 269]; *Chakmakjian* v. *Lowe* (1949), 33 Cal.2d 308, 313 [201 P.2d 801].)'' To the same effect are *Norton* v. *Futrell*, 149 Cal.App.2d 586, 588 [308 P.2d 887], and *Scott* v. *Burke*, 39 Cal.2d 388, 394 [247 P.2d 313].

Since the evidence presented at the first and second trials is substantially the same, plaintiff is correct in contending that it is the law of the case that plaintiff's evidence did not establish decedent's contributory negligence as a matter of law. (*Wells* v. *Lloyd*, 21 Cal.2d 452, 454-457 [132 P.2d 471].) Upon this premise plaintiff argues that the prior decision constituted a determination that the testimony produced by plaintiff was not irreconcilable with the presumption that at the time and place in question the decedent exercised due care for his own safety and protection. Plaintiff argues, in other words, that "to hold that the decedent's conduct was irreconcilable with the presumption of due care is tantamount to saying that the decedent was guilty of contributory negligence as a matter of law."

We conclude that the decision reversing the judgment of nonsuit established the law of the case that plaintiff's testimony was not irreconcilable with the presumption of due care. This is made manifest by the concluding sentence of that opinion reading as follows: ''Clearly it was a question of fact for the jury to determine whether decedent, under the circumstances existing at the time, took the precautions which the situation demanded for his own protection.'' (*Murphy* v. *Atchison, Topeka & Santa Fe Ry., supra,* 139 Cal.App.2d 792, 798.) It logically follows that the instruction in question should have been given.

The conclusion that the refusal of the instruction was error imposes upon us the further duty to canvass the question

whether the error requires a reversal. In recent decisions our Supreme Court has furnished us with helpful guidance in the form of restatements of the test properly to be applied in the determination of this question. ██ In *People* v. *Watson*, 46 Cal.2d 818, at page 836 [299 P.2d 243], following a careful and comprehensive review of earlier decisions dealing with the application of article VI, section 4½ of the California Constitution, Mr. Justice Spence restated the test in the following language:

"Giving due consideration to the varying language heretofore employed in relating the constitutional amendment to the particular situations involved, it appears that the test generally applicable may be stated as follows: That a 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error. Phrasing the test in this language avoids any complexity which may be said to result from the language employed in the double negative approach, and such phrasing seems to coincide with the affirmative language used in the constitutional provision."

More recently, in *Alarid* v. *Vanier*, 50 Cal. 617, 625 [327 P.2d 897], it was held that errors of the trial court in giving two inappropriate instructions were not sufficiently prejudicial to require a reversal. In the opinion by Mr. Chief Justice Gibson the controlling test is restated in terms consistent with the language from *People* v. *Watson, supra.*

██ In obedience to the requirements of these decisions we have made a careful "examination of the entire cause, including the evidence" and from that examination we have reached the opinion that it is not "reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." We conclude, accordingly, that there has been no miscarriage of justice.

It seems pertinent to the question whether a miscarriage of justice has occurred to observe that plaintiff has had two trials of this cause. In the first a learned trial judge held (erroneously but perhaps not altogether unreasonably) that decedent had been guilty of negligence as a *matter of law*. In the second trial a jury apparently found the decedent guilty of contributory negligence as a *matter of fact* upon evidence which described decedent's actions with such clarity and consistency

as to facilitate a most clear and satisfactory visualization of the tragedy.

Evidence of such completeness, consistency and unquestionable reliability as that which we find in the instant record leaves precious little room for the application of any conclusional presumption concerning the decedent's conduct. Viewing the situation realistically, we think an intelligent jury could not reasonably have given any substantial weight to the presumption in the circumstances of this case. The only possible justification for the employment of the presumption against the party carrying the burden of proof is to provide a balancing factor to compensate for a handicap resulting from the destruction of a vital source of evidence. The reason upon which such justification rests is almost nonexistent in such a case as this. It is in marked contrast with cases in which the available evidence concerning the conduct in question was meager, contradictory or of doubtful reliability.

The purported appeal "from all proceedings taken on motion for a new trial and all matters to which the same relate" obviously presents nothing for review and the same is dismissed.

The judgment is affirmed.

Fox, P. J., and Ashburn, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 15, 1958. Carter, J., was of the opinion that the petition should be granted.