[Civ. No. 5792.   Fourth Dist.   Dec. 23, 1958.]

PATRICIA JEAN HENLEY et al., Respondents, v. THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY (a Corporation) et al., Appellants.

Robert W. Walker, Richard K. Knowlton and Charles D. Swanner for Appellants.

Penney & Penney for Respondents.

MUSSELL, J.—This is an action for damages for wrongful death brought pursuant to section 377 of the Code of Civil Procedure by Patricia Jean Henley in her own behalf and as guardian ad litem for her minor son, Robert Maynard Henley, Jr., as the result of the death of her husband, Robert Maynard Henley.

The case arose from a collision between a disabled cement mixer truck, upon the exterior of which the decedent was situated, and a railway freight train of appellant, The Atchison, Topeka and Santa Fe Railway Company (hereinafter called "Santa Fe"), at the intersection of the Santa Fe main line tracks and Jefferson Road in the township of Atwood, county of Orange, on June 21, 1955. A jury returned a verdict in favor of plaintiffs for the sum of $29,000 and the defendants appeal from the judgment which followed and from an order denying their motion for a judgment notwithstanding the verdict.

The accident occurred at the intersection of Jefferson Road with the main line of the Santa Fe at approximately 4 p. m. The general area of the crossing was open, undeveloped country, and there were no climatic obstructions to vision. The Santa Fe train was approaching Jefferson Road from the east on the northerly main line tracks, which extend generally east and west and intersect Jefferson Road, which runs generally north and south. Jefferson road is approximately

2,000 feet west of the Atwood depot. Paralleling the railroad track at a distance of approximately 25 feet to the north thereof is Placentia Road, into which Jefferson Road deadends. Between Atwood depot and Jefferson Road the railroad tracks curve to the left for westbound trains and the westerly end of the curve is approximately 750 feet from Jefferson Road. The easterly end of the curve was approximately 1,700 feet east of the Jefferson Road crossing. For northbound traffic on Jefferson Road a crossarm signal and a highway stop sign were located just south of the railroad tracks.

Vincent Yorba, the operator of the cement mixer truck involved, was traveling north on Jefferson Road. When he attempted to cross the Santa Fe railroad tracks, his motor stalled, and the truck came to a stopped position with its rear set of dual wheels between the rails of the Santa Fe main line and the truck cab was completely north of the tracks. Yorba testified that he remained in the cab and attempted to rock the truck out of the depression between the rails by the use of the starter. While he was so engaged, the decedent, driving a similar cement mixer truck, stopped behind Yorba's truck. got out and walked over to it on the east side and asked what was wrong. When Yorba stated he could not get his truck started, Henley opened up the hood, took off the air cleaner, and "stood with one foot on the fender and his other foot on top of the carburetor," helping Yorba to get the truck started. Yorba testified that he did not know whether Henley was in this position at the time of the accident and presumed that he was. Within five minutes after Henley came up to Yorba's truck a Santa Fe freight train, approaching the crossing from the east at a speed of approximately 55 to 60 miles per hour, struck Yorba's truck. Yorba testified that while Henley was working on the truck he asked him (Yorba) to keep a lookout for him and that he (Yorba) did keep a lookout for train traffic; that he heard no warning of the approaching train, did not hear any bells ringing or any whistles, did not hear any sound at all; and did not know at the time of the accident that he had been hit by a train.

The railway train approaching the crossing from the east came to a stop approximately 1,100 feet west of the intersection and certain wheels of the locomotive were derailed by the impact. The testimony of the engineer, fireman, and the brakeman, who were riding in the engine cab prior to the accident, indicated that the train was proceeding from San Bernardino to Los Angeles at a speed of approximately 55

miles per hour; that both headlights were on, the automatic bell was ringing, and the engineer had sounded a regular crossing whistle series while approaching Van Buren crossing (approximately 1,700 feet east of Jefferson Road) and that immediately thereafter a similar series was started and blown until the locomotive was approximately 150 feet from the point of impact. The engineer and fireman testified that they could not pinpoint or distinguish the Jefferson Road crossing until the locomotive had proceeded practically through the left hand curve just east of the crossing; that when the mixer was noted stalled on the main line, the emergency brakes were applied some 600 to 800 feet east of the crossing; that thereafter the engineer remained at his post, sounding the whistle, until the impact was imminent, at which time he fled toward the rear of the cab.

A Santa Fe road foreman of engines testified that under the conditions prevalent at the time of the accident 2,500 to 2,600 feet would be necessary to bring the train to a stop, absent the derailment.

Witness Charles Peltzer, who was called as a rebuttal witness by the plaintiffs and was also under subpoena by the defendant, testified that he was working as a ranch hand approximately one-quarter of a mile south of the scene of the accident, in an open field, and had watched the train as it crossed the intersection at Van Buren; that he heard no bell or whistle blown at all from Van Buren to the Jefferson Road crossing until the train was approximately 500 feet from the Jefferson Road crossing and that "There was absolutely only two short blasts, and extremely short"; that he estimated the speed of the train at 60 miles per hour or better and that he observed no noticeable reduction of speed of the train from the time he first observed it at Van Buren crossing to the point of impact.

The witness Yorba testified that he could see a half a mile up the track from his position in the cab; that there was nothing to obstruct his view at all and that there was nothing to obstruct the vision of Henley when he was on the cab. A portion of Yorba's deposition was read into the record wherein he recalled a conversation near the intersection with the fireman and engineer as follows: "I laid back down and I can remember the engineer coming up and I said 'Why in the heck didn't you blow the whistle?' He said, 'We didn't have time.' He (the fireman) said, 'The engineer would never have seen you if I hadn't have said something.'"

Appellants first contend that the court should have granted their motions for nonsuit, directed verdict and judgment notwithstanding the verdict on the ground that the sole cause of the death of Robert Maynard Henley was as a matter of law his own negligence. We do not agree with this contention.

In *Anthony* v. *Hobbie,* 25 Cal.2d 814, 818 [155 P.2d 826], it was held that ''The burden of proving contributory negligence is upon the defendant. (19 Cal.Jur. 697-699.) True, contributory negligence may be found by the trier of fact from the plaintiffs' own evidence. But cases in which it can be said that the negligence of plaintiff contributes proximately to the accident as a matter of law are rare.

The rule has been stated in various ways in a legion of cases, that contributory negligence is not established as a matter of law unless the only reasonable hypothesis is that such negligence exists; that reasonable or sensible men could have drawn that conclusion and none other; that where there are different inferences that may be drawn, one for and one against, the one against will be followed; and that before it can be held as a matter of law that contributory negligence exists, the evidence must point unerringly to that conclusion. (Citing many cases.)''

In *Merlino* v. *Southern Pac. Co.,* 132 Cal.App.2d 58, 67 [281 P.2d 583], the court reiterated the rule stated in *Anthony* v. *Hobbie, supra.*

In *Balthrop* v. *Atchison, T. & S. F. Ry. Co.,* 142 Cal. App.2d 823, 825 [299 P.2d 341], the rule is stated that '' 'where it is shown that a driver has exercised some care, the question whether or not the care actually exercised was due and sufficient will always be a matter for determination by the jury.' '' Citing *Startup* v. *Pacific Elec. R. Co.,* 29 Cal.2d 866, 871 [180 P.2d 896].) See also *Murphy* v. *Atchison, T. & S. F. Ry. Co.,* 139 Cal.App.2d 792, 797 [294 P.2d 458].

In *Austin* v. *Riverside Portland Cement Co.,* 44 Cal.2d 225, 237, 238, 239 [282 P.2d 69], it is said that it has long been recognized that '' '. . . where a person must work in a position of possible danger the amount of care which he is bound to exercise for his own safety may well be less by reason of the necessity of his giving attention to his work than would otherwise be the case. (Citing cases.)''; that to arbitrarily adopt as a standard of negligence *per se* the rule that if one may be charged with a knowledge, past or

present, of a danger, he is precluded from recovery for injuries sustained therefrom and let the rule rest there for all cases would be to establish a doctrine dangerous in its application and unsound in principle and one not warranted by the present weight of authority; that whether forgetfulness of a known danger constitutes contributory negligence is a question for the trier of fact, giving consideration to the circumstances even though there is no sudden disturbance or peril confronting the plaintiff and causing the lapse of memory; to forget is not negligence unless it shows a want of ordinary care; and that generally the question is one for the jury.

In *Jones* v. *Southern Pac. Co.*, 74 Cal.App. 10 [239 P. 429], which was an action to recover damages for the death of plaintiff's husband, who was an employee of the Southern Pacific Company and was struck by defendant's train while he was on the tracks making repairs, the court held that ". . . it may be said that negative testimony of witnesses who are in a position to hear and to observe, who declare they heard no signals and saw none, even as opposed to positive testimony that signals were given, presents a question to be submitted to the jury, and it has been held such negative evidence may be sufficient to sustain a verdict.

In the instant case the decedent was lawfully attempting to assist Yorba in getting his truck across the railway tracks. The cab of the truck was north of the tracks when the accident happened. Yorba heard no warning of the approaching train and was attempting to rock the rear wheels of the truck out from between the rails when the accident occurred and he did not know that a train had hit the truck until after the accident happened. There was no direct testimony as to what the decedent was doing at the precise time of the accident, as to whether he heard or saw the approaching train and attempted to leap from the truck or as to what part of the train or truck struck him. He could not keep a constant lookout for approaching trains and at the same time continue with his efforts to start the motor of the truck. Obviously Yorba did not see the train and was not able to testify as to how the decedent met his death.

The question of whether or not the decedent exercised reasonable and ordinary care and watchfulness was, under the circumstances, a question of fact for the jury and we cannot hold as a matter of law that the sole cause of his death was

his own negligence or that appellants were entitled to the direction of a verdict against respondents.

The trial court instructed the jury as follows: "You are instructed that the law presumes that the decedent, Robert Henley, took due care for his own concern and you are to follow this presumption unless it is overcome by the evidence which is convincing to your minds by a preponderance of the evidence." Appellants claim that the giving of this instruction constituted prejudicial error, asserting that substantial evidence was placed before the jury by respondents, that the decedent failed to exercise ordinary care in watching and listening for an approaching train. ■ In *Brandelius* v. *City & County of San Francisco,* 47 Cal.2d 729, 736 [306 P.2d 432], the court, in ruling that it was not improper to give an instruction on the presumption of due care in that case, said:

"While under some circumstances there is no room for the presumption where the party whose claimed negligence is at issue either himself testifies or introduces evidence in his own behalf as to his acts and conduct immediately preceding and at the time of the accident (*Speck* v. *Sarver,* 20 Cal.2d 585, 587-588 [128 P.2d 16]; *Zollars* v. *Barber,* 140 Cal.App. 2d 502, 506 [295 P.2d 561]), the benefit of the presumption is available if such person be deceased and the testimony of plaintiffs' witnesses respecting the deceased's acts and conduct at the time involved is not 'wholly irreconcilable' with such presumption (*Gigliotti* v. *Nunes,* 45 Cal.2d 85, 93 [286 P.2d 809].)"

In *Gigliotti* v. *Nunes,* 45 Cal.2d 85, 93 [286 P.2d 809], the court said: "Although there is no room for the presumption where the driver or other person whose claimed negligence is at issue himself testifies to his actions at the time involved (see *Speck* v. *Sarver* (1942), 20 Cal.2d 585, 587-588 [128 P.2d 16]), the rule is established that if such person be deceased or unable to testify by reason of loss of memory, the fact that other witnesses for the parties testify fully as to the acts and conduct of the allegedly negligent person does not deprive the party relying on the presumption of the benefit thereof unless the testimony which he himself produces 'under circumstances which afford no indication that the testimony is the product of mistake or inadvertence . . . is wholly irreconcilable with the presumption sought to be invoked.' (*Westberg* v. *Willde* (1939), 14 Cal.2d 360, 365-368 [94 P.2d 590]; *Mar Shee* v. *Maryland Assur. Corp.* (1922), 190 Cal. 1, 9 [210

P. 269]; *Chakmakjian* v. *Lowe* (1949), 33 Cal.2d 308, 313 [201 P.2d 801].)''

In *Swanson* v. *Bogatin*, 149 Cal.App.2d 755, 757 [308 P.2d 918], it is said that ''It has often been decided that the question as to whether or not the giving of such an instruction as this on the presumption of due care is prejudicial must be determined upon the facts of the particular case.''

■ In the instant case the plaintiffs produced no direct evidence as to the conduct of the decedent immediately prior to or at the precise time of the accident. The testimony of witness Yorba indicates that he did not see the train approaching and that he was not watching the decedent for an appreciable time before the accident. Under the circumstances, plaintiffs were entitled to the benefit of the presumption. The testimony of plaintiffs' witnesses was not wholly irreconcilable with it and there was no reversible error in the giving of the instruction. (*Duehren* v. *Stewart*, 39 Cal.App.2d 201, 208 [102 P.2d 784].)

■ Appellants further argue that they were prejudicially detrimented by the jurors' view of the scene and that the jury was improperly allowed to observe subsequent precautions taken by the railway company at the crossing. However, in *Nunneley* v. *Edgar Hotel*, 36 Cal.2d 493, 501-502 [225 P.2d 497], it was held that:

·''The question as to whether the jury should be allowed to view the premises where an accident occurred is governed by section 610 of the Code of Civil Procedure, and is committed to the sound discretion of the trial judge. An appellate court will not reverse a judgment because of a ruling in that regard unless the record clearly shows an abuse of that discretion. (*Brown* v. *Lemon Cove Ditch Co.*, 36 Cal.App. 94 [171 P. 705]; see also *People* v. *Pompa*, 192 Cal. 412, 422 [221 P. 198].)''

In that case, as here, the court properly instructed the jury that the changes made since the accident were to be disregarded by it. No abuse of discretion appears in this connection.

Judgment and order denying motion for judgment notwithstanding the verdict affirmed.

Griffin, P. J., and Shepard, J., concurred.