## N. B. THOMPSON *v.* MOBILE, JACKSON & KANSAS CITY RAILROAD COMPANY.

### [61 South. 596.]

1. WATERS AND WATERCOURSES. *Overflow of land. Railroads. Burden of proof. Instructions. Surface water. Obstructions.*

> In a suit against a railroad company for damages to land caused by obstructing the natural drainage and the flow of surface water, where the defendant relied upon an extraordinary and unusual rainfall in defense, it was error for the court to instruct the jury that unless the plaintiff had shown with reasonable certainty what part of his damage was caused by the unusual and extraordinary rainfall, they should find for the defendant, as this instruction shifts the burden of proof to the plaintiff to disprove the affirmative plea of the defendant.

2. SAME.

> A railroad company must provide for the natural flow of surface waters, if this can be done without undue expense, and without danger to the operation of the road.    ·

3. SAME.

> A railroad company is responsible for any damage resulting from its obstruction of a natural watercourse, without reference to whether or not the obstruction was reasonable or unreasonable.

APPEAL from the circuit court of Neshoba county.
HON. C. L. DOBBS, Judge.

Suit by N. B. Thompson against the Mobile, Jackson & Kansas City Railroad Company. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Byrd & Wilson* and *Huddleston & Austin,* for appellant.

There are many errors assigned but in this brief we shall attempt to present that the court erred in giving· instructions 3, 5, 6, 9 and 10 and in presenting our views,.

we shall endeavor to do so along elementary lines, so well
established and recognized by law writers and the courts,
as to need no citations to sustain them.  These instruc-
tions, taken together, simply inform the jury, that al-
though they may believe that plaintiff has suffered dam-
age, yet unless he has shown to the satisfaction of the
jury, what part of it was occasioned by the wrongful con-
struction of the road and what part was occasioned by
the act of God definitely, so that the jury may be able
to ascertain each of these items of damage, as to the
crop 1906, they should find for the defendant.  And not-
withstanding what damage the plaintiff may have suf-
fered from the construction of the road across the val-
ley and watercourses mentioned, yet if the jury believe
that the construction of such road did not unreasonably
and unnecessarily interfere with the passage of waters
in the natural watercourses, then the defendant was not
liable in any sum.  Such is not the law, never was the
law and we hope never will be the precedent set by this
court.  It is violative of our Constitution, which says that
private property shall not be taken or damaged for public
use, except due compensation being first made to the
owner or owners thereof, in a manner to be prescribed
by law.  Sec. 17, Constitution 1890.  Instruction 10 given
for the defendant informs the jury that it makes
no difference how much the plaintiff was damaged, yet if
it was reasonable and necessary that the natural flow of
waters be obstructed, then the railroad was not liable.
Such is not the law.  However reasonable, however nec-
essary it may have been, whenever plaintiff's property
was taken or damaged by the act of defendant without
first compensation therefor, the defendant became liable
and it cannot avoid or shift its liability under the plea
of reason or necessity.  The crux is not the reasonable-
ness or necessity on the part of the railroad but the tak-
ing or damage to the property of the plaintiff.  When-
ever private property is converted or injured by the act

of another, even though it be imperatively done, compensation is due the owner and in the case at bar the evidence conclusively showed damage to plaintiff's property and he was entitled to judgment even though for nominal damages. That the natural flow of the waters had been obstructed and that plaintiff's land had in consequence thereof been submerged, were, if not admitted facts, abundantly established by the evidence that stands uncontradicted and such being the case, plaintiff was entitled to a verdict.

The court also erred in giving instructions 3, 5 and 10 and those applicable to the defense of an unprecedented flood or the act of God as to the destruction of the crop of 1906 and the injury to the land occasioned by the overflow of that year. These instructions taken together simply announce the doctrine, that if the jury should be satisfied that the flood of that year was an unprecedented one and the plaintiff had failed to show by the evidence just exactly how much of the damage was done by "an improper act" or by "the alleged improper construction of the railroad," then the jury should find for the defendant, placing the burden on plaintiff of proving the matter of defendant's affirmative plea.

The "act of God," of the public enemy and unavoidable accident are affirmative defenses and the burden of establishing their truth rests upon him, who pleads them. It did not devolve upon the plaintiff to prove defendant's plea and yet these instructions so hold. If the act of God is pleaded as a defense to the whole action it certainly would devolve upon the defendant to sustain his plea by the proof. By what manner of reasoning can it be held otherwise, when he attempts to defend as to a part? To so hold would be to do violence to all the rules of reason or logic and of pleadings. And yet this is just what these instructions do besides being otherwise objectionable; because they announce to the jury, that before they can give any damges at all, they must be sat-

isfied that such damages result from an "improper act" or the "alleged improper construction" of the railroad, which is not true in law. It makes no difference how proper the act or the construction of the railroad may be, if it results in injuries to the individual he is entitled under the law to recover for it. When plaintiff has established that he has been injured and that injury was occasioned by the building of the railroad, whether properly or improperly built, and the amount of that damage, he has done all that is required and if the defendant desired to escape in whole or in part by the plea of the act of God, he must establish his plea. More, whenever the plaintiff shows that his property has been overflowed and the cause of the overflow was from the construction of the railroad and showed with any degree of certainty the amount of injury occasioned thereby, he was entitled to a judgment for that amount and if the defendant wished to escape liability entirely, he should have shown that the injury was occasioned by an unprecedental flood; and if he wished to escape in part such damage, he should have shown that part, at least, of the injury was due to such act of God and what part. That the damge was occasioned entirely by the construction of the road is established by the undisputed evidence of several witnesses, who say that as much, or more, water fell in 1900 and 1902 as on the occasion complained of and Mr. Thompson's uncontradicted statement that the land never overflowed previous to the building of the road shows that the overflow was the result of the construction and that the waterfall of 1906 was not even an unusual one and certainly not an unprecedented one for that community. The doctrine of act of God, superior force or act of the public enemy, unavoidable accident apply to the law of contracts and we doubt very much whether it had any appliancy in trespass. Such, when proved, will excuse one from performing his contract, but can a wrongdoer excuse his wrong act by pleading it? A common carrier

can evade his contract of speedy transportation or
prompt delivery by pleading and proving prevention
by unavoidable accident of the act of God, or of the pub-
lic enemy, but can one, who by his act floods your land,
defend his wrongful act by saying that the land would
have been flooded anyhow by an unprecedented rain-
fall? The uncontradicted proof established that this
land had never been flooded before the building of the
road and that it was flooded after such building and that
the water stayed upon the ground for several days there-
after and that the overflow and the remaining so long
over the land were occasioned by the building of the road
and that the crop of 1906 was almost, if not entirely,
ruined by such overflowing and retention of water on
the submerged portion of the land. Can the railroad de-
fend the injury done by the fact, or the contention, that
the crop would have been damaged to some extent by the
storm anyway? And that the plaintiff cannot recover
in any amount unless he can show to a certainty what
part of the damage was occasioned by the construction
of the road and what part by the storm? Even in the
law of contract the party who relies upon the act of God
for a defense must be entirely clear of blame himself.
Thus, where a carrier seeks to avoid his contract by this
plea, he must show that he has in no way been negligent.
If he has delayed shipment and the property is destroyed
*in transitu,* he is held to strict account. *Green-Wheeler
Shoe Co.* v. *Chicago, etc., R. Co.,* 8 Am. & Eng. Ann.
Cases, 45; *Ala. Great So. R. Co.* v. *Quarles,* Id. 308.

From these and many other cases similar, we gather
the doctrine that one cannot avoid his contract under
this plea of act of God unless he shows also that he has
in everything been in no wise negligent. How much
more so in the case of the trespasser. Of course we rec-
ognize that one can avoid in trespass by the plea, but it
would devolve upon him to show in that event, that he is
in no way connected with the injury but it resulted solely

from the act of God and he is blameless. The vicious-
ness of these instructions, especially instructions 5 and
10, is that they place on the plaintiff the onus of segre-
gating definitely the damage done by the act of God from
that done by the act of defendant and tell the jury that if
plaintiff has not so done by the proof, they should find
for the defendant. In other words, telling the jury that
notwithstanding they may be satisfied that plaintiff has
suffered by defendant's act, yet unless plaintiff has also
shown exactly how much damage he suffered from the
storm, they should find for defendant.

*Flowers, Alexander & Whitfield,* for appellee.

The principal objection of appellant seems to be that
the court would not allow the jury to take into consider-
ation the defense shown under the plea of the "act of
God." He takes the position that the jury should not
eliminate the damage caused by the act of God, but that
they should bring in a verdict for all damages from every
cause. He would have the court eliminate and do away
with this defense. Plaintiff's trouble was that he could
only show damage done. He could not show even ap-
proximately what part of the damage was caused by im-
proper construction or what part was caused by the "act
of God" even though the plaintiff and all of his witnesses
proved by their own testimony that this storm and flood
of 1906 was one of the worst ever known in this country.

Counsel for appellant seems to rely principally upon
instruction No. 10. We submit that a simpler announce-
ment of the elementary law contained therein could not be
written. It simply says that the defendant is only re-
quired to so maintain its road as constructed across the
valley as not unnecesarily and unreasonably to interfere
with the passage of water in the natural watercourses.
Counsel seems to think from his discussion of this instruc-
tion that there is absolutely no defense of any kind when
damage is done to crops. He recognizes no defense known

to law.   We ask, how could it have been possible for the jury to arrive at any intelligent or accurate amount in their verdict unless the evidence showed what amount should be deducted on account of the "act of God."

The court will notice from the record that the plaintiff offered absolutely no evidence whatever to show what part of the damage to the crop was caused by the act of God.   He seemed to think that the defendant should show this for him because he plead the "act of God."

Instruction No. 3 complained of simply announces that if the plaintiff had offered no evidence which would have enabled the jury with a reasonable certainty to ascertain what part of the damage was caused by the "act of God," if they should find such, then they could not intelligently arrive at a verdict.   Certainly there can be no serious objection to this instruction.

Instruction No. 5 complained of simply tells the jury that if they believe from the evidence that there was any damage done by improper construction of the embankment and that there was also damage for an unusual and extraordinary act of providence, that they could award only such damages as they believed from the evidence was caused solely by the improper construction and that they could not award damages for such injury as was caused by the act of Providence. Certainly there can be no serious contention made against this instruction.

We submit that the evidence in this case overwhelmingly showed that the damage done to the crop and land was occasioned by one of the most severe and terrific wind and rainstorms that section of the country had ever known; that the two greatest storms were in the years 1902 and 1906, when the crop of every farmer was damaged everywhere whether it was on the railroad or not. There was not one scintilla of evidence introduced to show what proportion of the damage was caused by this unprecedented storm.   The evidence also overwhelmingly shows that the railroad embankment did not ob-

struct the natural water flow of the waters, down hill, for it was conclusively shown that the water on the opposite side of the embankment was equally as high.  If, then, the embankment did not cause the high water on the west side when the streams were flowing west, how can it be said that the embankment caused it on the east? See *Mobile, etc. R. R. Co.* v. *Bynum,* 15 So. 795.

"A railroad company is not liable for damages for culpable negligence when the injury results fom the failure of the company to provide, in the construction of its roadbed, against extraordinary floods."  8 Am & Eng. Ency. of Law, p. 70.

"There is no liability on the railroad company for not constructing culverts so as to pass extraordinary floods."

*Railroad Co.* v. *Gilleylan,* 56 Penn. St. 4501; see also *Memphis R. R. Co.* v. *Reeves,* 19 L. R. A. (N. S.) 909; *Kansas City R. R. Co.* v. *Williams,* 58 S. W. 570; *R. R. Co.* v. *Davis,* 73 Miss. 678; *Kansas City R. R. Co.* v. *Smith,* 72 Miss. 677.

With all due respect to learned counsel for appellant we are forced to say that if the arguments advanced by him be law, then the court should have instructed the jury that the defendant was liable for damages done by the "act of God."

We submit that there is nothing to this case but the facts and the jury has passed upon them.  A jury of twelve local men in Neshoba county brought in a verdict against their neighbor and in favor of a railroad corporation.  Certainly the facts must have caused this verdict and the right result to be reached.

Cook, J., delivered the opinion of the court.

This suit was filed in the circuit court of Neshoba county by appellant for alleged damages to his land caused by the obstruction of the surface water, and also the obstruction of the flow of the streams draining his land, etc.  The railroad company filed the general issue,

and gave notice that they would rely upon the "act of God" in defense of the alleged damages.

The evidence shows indisputably that the land of appellant was overflowed, and that the overflow damaged the crops growing thereon, and there is testimony tending to show that a permanent damage to the land also followed from the water standing on the land for an unusual time. The evidence tends to show that the overflow was caused by an extraordinary and unusual rainstorm. The following instruction was given by the court at the request of the defendant railroad company: "The court further charges the jury, for the defendant, that if the plaintiff has offered no evidence which will enable you with a reasonable certainty to ascertain what part of the damage was caused by an unusual and extraordinary act of God, if you should find that there was an unusual and extraordinary rainfall, then you will find for the defendant." This instruction shifts the burden of proof to the plaintiff to disprove the affirmative plea of the defendant, and directs a verdict for defendant, if the plaintiff had failed to measure the damage caused by the rainstorm.

The following instruction was also given by the court at the request of defendant: "The court further charges the jury, for the defendant, that the railroad company was not bound to so construct its line across the said valley as in no way to materially interfere with the waters that run down the said valley and not in the bed or natural watercourse; but the defendant is only required to so maintain the said road as constructed across the said valley as not unreasonably or unnecessarily to interfere with the passage of the water in *natural watercourses.*" The first part of the instruction is too broad. The railroad company must provide for the natural flow of surface waters, if this can be done without undue expense, and without danger to the operation of the road.

We think that the latter part of this instruction was clearly erroneous. It appears from the evidence that

the land in question was located in a valley, and that there were three different watercourses provided by nature to carry off the water falling in the watershed of this valley, which natural drains consisted of two wide and deep sloughs and one creek. The roadway of the railroad company was conducted across the bed of these streams upon trestles. The testimony tended to show that the railroad company, in the construction of its roadway, did not provide against the obstruction of the natural watercourses; and the instruction assumes that, although the jury might believe that the roadbed did obstruct the course of the natural watercourses, yet it would not be liable for any damages resulting from such failure, if the jury further believed from the evidence that the obstruction of the flow was not unreasonable. The instruction ignores the distinction between surface water and water flowing in natural channels.

In this state it has been held that the railroad must take care of the flow of the surface water, if to do so would not result in any danger to traffic, and if this could be done without incurring an additional expense out of all proportion to the injury of adjacent lands. From the necessities of the case, the courts adopted a rule with regard to the flow of surface water applicable to railroads which would not apply to ordinary landowners. *Sinai* v. *Railway Co.*, 71 Miss. 547, 14 South. 87. So far as the flow of water in natural courses is concerned the railroad company would be required to answer for any damage resulting from its obstruction of such watercourses, without reference to whether or not the obstruction was reasonable or unreasonable. In other words, the obstruction of a natural watercourse imposes upon the obstructor the obligation to answer for all damages flowing from such obstruction.

*Reversed and remanded.*