MILLER *v.* ERVIN *et al.*

(In Banc. March 23, 1942. Suggestion of Error Overruled May 11, 1942.)

[6 So. (2d) 910. No. 34838.]

714

Loving & Critz, of West Point, for appellant.

**N. H. Malone**, of West Point, and **Carl Fox**, of Mobile, Ala., for appellees.

**McGehee, J.**, delivered the opinion of the court.

This suit is one for damages alleged to have been sustained by the appellant in the sum of $2,265 on account of 30.2 acres of her land having been subjected to over-

flow by reason of the digging of a ditch on the right-of-way of the Mobile and Ohio Railroad Company while the same was being operated by the appellees as receivers.

The particular line of railroad involved was that running in an easterly direction from Artesia towards Montgomery, Alabama, and the plaintiff's farm was located immediately north of the right-of-way, along which the ditch was dug on the north side of the track. It was shown that the ditch was excavated in order that the dirt taken therefrom might be used to strengthen and build up the roadbed parallel with the ditch in order that a single locomotive engine might pull trains over that portion of the line, whereas theretofore it had required two locomotive engines or a "double header" to be used for that purpose. Excavation was made by the use of a drag-line operated by two laborers and at a cost slightly in excess of four cents per cubic yard, whereas it was shown that to have brought the dirt from elsewhere it would have been necessary to haul the same and that the operation would have cost the railroad company approximately forty cents per cubic yard to move the dirt to the place where it was used.

Ordinarily a railroad company has the right to use its right-of-way for the purpose of securing dirt by excavation and with which to build, strengthen or maintain its track-bed without responding in damages to an adjoining landowner consequent thereto. New Orleans, B. R., V. & M. R. Co. v. Brown, 64 Miss. 479, 1 So. 637; City of Canton v. Cotton Warehouse Co., 84 Miss. 268, 36 So. 266, 105 Am. St. Rep. 428, 65 L. R. A. 561; R. C. L., Vol. 22, pp. 863 et seq., secs. 114 & 115. But where in making such use of its right-of-way the railroad company interferes with the flow of surface water on the land of the adjoining owner, it may become liable for damages resulting therefrom where it is shown that another method for such construction, strengthening or maintenance which is equally safe, convenient and inexpensive could have been used so as to avoid such damages to the adjoining landowner. Sinai v. Louisville, N. O. & T. R. Co., 71

Miss. 547, 14 So. 87; Kansas City, M. & B. R. Co. v. Smith, 72 Miss. 677, 17 So. 78, 27 L. R. A. 762, 48 Am. St. Rep. 579; Yazoo & M. V. R. R. Co. v. Davis, 73 Miss. 678, 19 So. 487, 32 L. R. A. 262, 55 Am. St. Rep. 562; Illinois Central R. Co. v. Wilbourn, 74 Miss. 284, 21 So. 1; Alabama & M. R. R. Co. v. Beard, 93 Miss. 294, 48 So. 405; Thompson v. Mobile, J. & K. C. R. Co., 104 Miss. 651, 61 So. 596; Holman v. Richardson, 115 Miss. 169, 76 So. 136, L. R. A. 1917F, 942; Mobile & Ohio R. R. Co. v. Tays, 142 Miss. 743, 107 So. 871; Columbus & Greenville R. R. Co. v. Taylor, 149 Miss. 269, 115 So. 200; Toler v. Bear Drainage Dist., 141 Miss. 851, 106 So. 88, 89. And where no other method equally safe, convenient and inexpensive as that adopted by the railroad company could have been used, any damage to an adjoining landowner by reason of interference with surface water is conclusively presumed to have been compensated for in the acquisition of the railroad company's right-of-way. Yazoo & M. V. R. R. Co. v. Davis, supra; City of Canton v. Cotton Warehouse Co., supra; Columbus & Greenville R. Co. v. Taylor, supra; Mississippi State Highway Comm. v. Hillman, 189 Miss. 850, 198 So. 565.

It was neither alleged nor proven in the instant case that the strengthening and building up of the roadbed at the point in question could have been done by a method other than that followed by the defendant carrier except at an enormously increased cost for the work as compared with the cost of approximately four cents per cubic yard of dirt taken in excavating the ditch alongside the roadbed at the point in question.

At the conclusion of the evidence offered by both the plaintiff and the defendant the court below granted a peremptory instruction in favor of the defendant railroad company. This action of the court is assigned as error on this appeal.

The facts disclosed that the ditch was excavated as a continuous project for several hundred feet on a down grade and of such width and depth as to carry the water which flowed therein from the lands of appellant at such

an accelerated velocity that when the same emptied into a large pond underneath a trestle at the east end of the ditch it was caused to overflow onto the lands of the appellant to the north before the waters could pass out of the pond through its natural outlet, as they were able to do prior to the digging of the ditch. But it is not contended that the ditch brought any additional water to the pond from other lands than those owned by the appellant, but that it merely accelerated the flow of the waters into the pond as aforesaid and the plaintiff also contends that prior to the digging of the ditch the road-bed absorbed a great deal of the water which flowed from her lands down to the right-of-way.

On motion of the appellees, as defendants in the court below, and after hearing proof on such motion a view of the premises by the jury was allowed over the objection of the appellant. The trial was then in progress in Clay County, whereas the premises to be viewed were located in the adjoining county of Lowndes, some twenty miles distant from the courthouse in Clay County. Upon the entry of the order granting a view of the premises by the jury the record shows that the trial judge, jury, sheriff, clerk, court reporter, and the witnesses went into Lowndes County, viewed the premises in question and took the testimony of witnesses introduced both on behalf of the plaintiff and defendant at the scene and later returned to the courthouse in Clay County where further evidence was introduced and the trial concluded.

It is, therefore, contended by the appellant that the case should be reversed for a new trial on account of the fact that a part of the trial which resulted in the judgment appealed from, was held at a place not authorized by law.

Section 2066 of the Mississippi Code of 1930, provides:

"When, in the opinion of the court, on the trial of any cause, civil or criminal, it is proper, in order to reach the ends of justice, for the court and jury to have a view or inspection of the property which is the subject of litigation, or the place at which the offense is charged to

have been committed, or the place or places at which any material fact occurred, or of any material object or thing in any way connected with the evidence in the case, the court may, at its discretion, enter an order providing for such view or inspection as is herein below directed. After such order is entered, the whole organized court, consisting of the judge, jury, clerk, sheriff, and the necessary number of deputy sheriffs, shall proceed, in a body, to such place or places, property, object or thing to be so viewed or inspected, which shall be pointed out and explained to the court and jury by the witnesses in the case, who may, at the discretion of the court, be questioned by him and by the representative of each side at the time and place of such view or inspection, in reference to any material fact brought out by such view or inspection. The court on such occasion shall remain in session from the time it leaves the courtroom till it returns thereto, and while so in session outside the courtroom it shall have full power to compel the attendance of witnesses, to preserve order, to prevent disturbance and to punish for contempt such as it has when sitting in the courtroom. In criminal trials all such views or inspections must be had before the whole court and in the presence of the accused, and the production of all evidence from all witnesses or objects, animate or inanimate, must be in his presence.''

The appellees argue that the statute does not restrict the view to a place or places situated within the county where the trial is being held, and in contending that no error was committed by the court below in permitting a view of the premises located in another county, they cite the following cases: People v. Bush, 71 Cal. 602, 12 P. 781; Jones v. State, 51 Ohio St. 331, 38 N. E. 79; Commonwealth v. Gedzium, 259 Mass. 453, 156 N. E. 890; Commonwealth v. Dascalakis, 246 Mass. 12, 140 N. E. 470; Commonwealth v. Handren, 261 Mass. 294, 158 N. E. 894. However, the statute under which the California case, supra, was decided, Penal Code of California Section 1119, does not permit any person to speak or communi-

cate with the jury at the scene visited on any subject connected with the trial, and that court held in the case of People v. Bonney, 19 Cal. 426, that such a view was not any part of the trial. The statute under which the Ohio case, supra, was decided, Section 7283, Rev. St., authorizes the appointment by the court of some person to show the place to the jury but forbids that anyone shall speak to the jurors on any subject connected with the trial while at the scene. The statute under which the two Massachusetts cases, supra, were decided involve a view of the premises by the jury, as provided for under Section 35, Chapter 234, Volume 2, General Laws of Mass., which is the same as Section 10, Chapter 137 of the Revised Statutes 1836 of Massachusetts, and that statute is silent as to what shall be done in connection with the trial while the view is being had, but in the Dascalakis case, supra [246 Mass. 12, 140 N. E. 477], the statute was construed and the court said that "its chief purpose is to enable the jury to understand better the testimony which has or may be introduced. The essential features may be pointed out by the counsel. No witnesses are heard. The oath to the court officers having charge of a jury on a view is to the effect that no one shall be suffered to address the jury. There can be no comment or discussion. The jury can simply use their eyes. They can obtain information only through sight." In the Handren case, supra [261 Mass. 294, 158 N. E. 896], the Massachusetts court again construed this statute and said that "it is plain that when the judge, the district attorney of Middlesex county, the jurors drawn for the county of Middlesex, and the deputy sheriff directed to assist the courts in Middlesex county, convene in Brookline and later in Watertown [both places being in Norfolk County], there was no court functioning at a place established by law for the judicial administration of justice; there was no clerk to record the doings of the court; there were no officers present with authority to enforce the orders of the court; and there were no jurors of the county to decide the issues to be presented by the indictment."

It is, therefore, urged by the appellant that when the provisions of our statute, Section 2066, Code of 1930, supra, are compared with those of the California, Ohio and Massachusetts statutes, which were construed in the above mentioned cases and wherein it was held in the first three of said cases to be permissible for a view to be taken by the jury in a county other than where the trial was being conducted, the decisions are not authority for sustaining the action of the court below in the case at bar; and that the last of the four cases above referred to is a decision which fully sustains the position of the appellant to the effect that such a view is not permissible. The difference in the language of those statutes when compared with our own may become unimportant in the consideration of whether those decisions can be looked to as authority for holding that no error was committed by the court below in the instant case under our statute, when it is recalled that in the case of Foster v. State, 70 Miss. 755, 756, 12 So. 822, 823, our court criticised those cases which adopt the theory that a jury was not receiving evidence when viewing the premises involved, and said:

"They declare that only impressions are received by the jurors, on such inspection, which would enable them to understand and apply the testimony offered. But this concedes the proposition in dispute. Impressions are made on the minds of the jury by dumb witnesses. They do have evidence of inanimate things. They are receiving impressions, evidence, enlightenment, from voiceless things, call it by whatever name you will; and they are themselves being made silent witnesses for or against the accused. They return to the court room with impressions, opinions, formed by an examination of dumb, inanimate witnesses; and, if erroneous impressions and opinions have been made and formed, their hurt is beyond all cure, for the jurors may not speak out what may weigh on their minds, but are become themselves dumb, passive witnesses. To say the jury cannot receive evidence by simply viewing the scene is to insult common sense. The most convincing evidence is made by the sense of sight.

The juror, on the view, sees, and thinks he knows what he sees, with all the conclusions flowing therefrom. . . . The impressions, the evidence, made by the mute witnesses, may be more potent in fixing the jury's verdict than the living witnesses speaking under oath to tell the truth.''

The appellant invokes Section 158 of the Constitution of 1890 and Section 473, Code of 1930; the effect of the constitutional provision being that the circuit court shall be held in each county at least twice in each year, and the Code section prescribing when the terms shall be held. But similar constitutional and statutory provisions were involved in the construction of the California, Ohio and Massachusetts statutes when it was held that a view may be had by the jury out of the county without the trial being rendered invalid, as aforesaid.

- But if it be assumed that the first three of the cases, supra, cited by the appellees from these other jurisdictions are in support of the contention of the appellees, it is also true that the last of the four cases, supra, is in full accord with the theory of the appellant to the effect that a view by the jury of a place in a county other than where the case is being tried is not authorized. Likewise, it was held in the case of Rockford, R. I. & St. L. R. Co. v. Coppinger, 66 Ill. 510, that a statute authorizing a view in eminent domain proceedings will not be deemed to confer power to send the jury beyond the territorial limits of the jurisdiction of the court, unless given in express words. Thus it will be seen that the decisions in other jurisdictions are apparently in conflict, and it is conceded that the question presented by this ground of error assigned in the case at bar is one of first impression in this state. We have referred to the authorities relied on by the respective parties in order to take cognizance of the fact that the question thus raised by the appellant is one not without difficulty, and we pretermit any decision of that point for the reason that under all the facts and circumstances disclosed by this record it can not be reasonably assumed that the jury observed

anything upon their view of the premises that would have suggested or indicated that there was any other method as safe, convenient and inexpensive that the railroad company could have adopted in strengthening and building up its roadbed at the point in question than by the excavation of the dirt from the side of the roadbed on its right-of-way where it was to be used. The plaintiff introduced two witnesses at the view of the place in question and they were unable to suggest any other method than that followed by the railroad company, except that the dirt could have been hauled from elsewhere and manifestly this would have been considerably more expensive. Nor is any other method suggested by the appellant in her brief on appeal, except such as would obviously have entailed a much greater expense for doing the work. It is urged that the jury may have observed at the scene that another method as safe, economical and inexpensive could have been adopted, but it is not reasonable to suppose that such was the case in view of the fact that the witnesses for the plaintiff were unable to suggest such a method either when testifying at the scene or in the court house. In other words, there is no substantial conflict in the testimony on the issue on which the peremptory instruction was granted by the court in favor of the defendant. Moreover, since the trial judge was present at the scene we must assume that he took into consideration the topography of the land, the distance to other available dirt, and any other facts that the jury could reasonably be assumed to have taken into consideration when he granted the peremptory instruction. A different situation is presented than would have been the case where an issue of fact was properly submitted to the jury and the losing party should complain that the jury may have been influenced in its finding by evidence illegally taken. Where the entire evidence presented no disputed issue of fact for the determination of the jury we are unable to say that the plaintiff was prejudiced by what the jury saw. The plaintiff is in the

attitude of asking for a reversal of the case on the ground that it was error for the jury to view the premises, and at the same time contending that the jury may have seen something at the view that would have entitled the plaintiff to recover, when the case otherwise made by the evidence does not disclose such right. In the case of Kress & Co. v. Sharp, 156 Miss. 693, 126 So. 650, 653, 68 A. L. R. 167, it was said:

"The courts of the several states have differed widely on the effect to be given by the appellate court to the view of the premises by the jury. Some courts hold that upon appeal the case must be considered solely upon the record of the testimony, while others maintain that the evidence which the jurors may reasonably be supposed to have obtained by the exercise of their powers of impartial observation while on the ground is to be considered as sufficient to sustain the verdict. Our court, while not having given any expression to a definite rule, has committed itself to a middle ground, as will be seen by reference to Bonelli v. Branciere, 127 Miss. 556, 90 So. 245; Cotton Mill Products Co. v. Oliver, 153 Miss. 362, 121 So. 111, and one or two others. The rule we think is summarized with approximate correctness in 1 Thomp. on Trials (2 Ed.), sec. 902, as follows: 'The true solution of this difficulty is that cases where there has been a view stand on appeal on a special footing; that, although what the jurors have learned through the view is evidence to be considered by them, yet, on grounds of public policy, having reference to the known imperfections which attend the conclusions of jurors, and even of the judges in the haste of nisi prius work, a reviewing court should set aside a verdict based partly on a view, unless it is supported by substantial testimony, delivered by sworn witnesses.' See, also, City of Topeka v. Martineau, 42 Kan. 387, 22 P. 419, 5 L. R. A. 775." See, also annotation 43 A. L. R., pages 1516 et seq.

Looking to all the facts and circumstances of this particular case we are of the opinion that a reversal for a

726

new trial would not be justified since we are unable to see how it could serve any good purpose.

Affirmed.

**Anderson** and **Roberds, JJ.**, took no part in this decision.