MARGIE O'DANIEL *v.* INTER-ISLAND
RESORTS, LTD.

No. 4096.

November 29, 1962.

Tsukiyama, C. J., Cassidy, Wirtz,
Lewis and Mizuha, JJ.

OPINION OF THE COURT BY CASSIDY, J.

In September of 1955 the plaintiff (appellee) filed an
action in the Circuit Court of the First Judicial Circuit to

recover damages for injuries sustained by her on the evening of August 21, 1954, through a fall on the premises of defendant's Kona Inn in Kailua, Kona, on the Island of Hawaii, Third Judicial Circuit.[1] The fall is alleged to have been caused by defendant's negligent failure to maintain adequate lighting of a step leading to a walk from a lanai of the hotel.

The case was tried before a jury, which returned a verdict in favor of the defendant on December 20, 1956. Judgment was entered on January 3, 1957. On January 11, the plaintiff filed a motion for a new trial based on the claim that a verdict for the defendant could not be substantiated or justified on the evidence adduced. On April 29, 1958, the trial judge filed a written decision holding that the motion was well taken. He left the bench on May 1. On May 6, another judge of the First Circuit entered an order granting a new trial pursuant to the decision of the trial judge and two days later entered an order allowing an interlocutory appeal from the order granting the new trial. After argument in this court on the merits of the ruling allowing the new trial, we raised and ordered briefing on the question of whether the verdict and judgment were vitiated by reason of the fact that, as related below, approximately one-half of the case was tried in the Third Judicial Circuit.

In the lower court plaintiff filed a motion to advance on June 27, 1956. This was immediately followed by a motion of defendant for change of venue and transfer of the record to the Circuit Court of the Third Judicial Circuit on the alleged grounds that it would be necessary in order to assure a fair trial for the jury to view the scene

---

[1]At the time this action was instituted the plaintiff was free to file it in any circuit. Since the enactment of Act 194, S.L. 1957, suits of this nature can be filed only in the circuit where the cause of action arose or the defendant is domiciled.

at night with the step light on and off so that it might properly determine whether or not there was sufficient illumination. The moving papers also recited that the five witnesses who would be called by the defendant all resided in Kona. At the hearing on the motion for change of venue, which was opposed, the court indicated it contemplated taking the jury to Kona to view the scene and hear testimony. Counsel for both sides expressed disagreement with and opposition to the proposal. At the conclusion of the hearing the motion was taken under advisement. A written order denying it was filed on September 5.

The next notation in the record on the matter is an entry in the clerk's minutes of September 10, reciting that, "counsel agreeing," the case was set for trial to commence on December 3 and with sessions scheduled to be held in Kona during the week of December 10. Subsequently, on the hearing of an unrelated motion, counsel for defendant informed the court that he had presented a stipulation to opposing counsel covering the proposed trial of a part of the case in Kona but that counsel declined to sign it. The court announced that unless a stipulation sanctioning the proposal made by it to hold sessions in Kona was signed it would reconsider and grant the motion for a change of venue, saying: "I'll make it clear. If they will not enter into a stipulation, the Court will transfer this case to Hilo."

The trial began in Honolulu on the date previously set. Prior to commencement of the selection of the jury, counsel met with the court in chambers and the matter of a stipulation to govern the proposed trial of a part of the case in Kona was brought up and discussed. Counsel for the plaintiff represented that conditions at the site of the accident had been changed in many material respects, including a change of the step light. Opposing counsel

admitted such to be the case and gave assurance that there would be a restoration. Counsel for the plaintiff then objected to having the proposed view taken at night, on the grounds that it would, in effect, be taking evidence. Counsel for the defendant suggested that the point be argued "when it comes up in the course of the case." Opposing counsel acquiesced and no ruling was made on the objection.

Plaintiff's case was presented in Honolulu during the first week of the trial. On Sunday, December 9, the jury, judge and court attaches proceeded by plane to Kona. Sessions were held during the week in the old Kailua Courthouse.[2]

At the conclusion of the trial session on December 11 counsel for the defendant moved that the jury be taken to the Kona Inn that evening for the view, again urging that it was imperative that the jury see the premises at night and observe a demonstration of the inn's lighting. The motion was opposed but counsel for the plaintiff consented to a daytime visit. The court denied a night view but ruled it would allow a view by daylight. The following day the jury was taken to Kona Inn for a view, and then returned to Honolulu. Court was reconvened in the First Circuit on December 14. After some rebuttal testimony and the settlement of instructions the case was argued and submitted on December 19 with, as stated, the jury returning its verdict in favor of the defendant on December 20.

During the course of settling instructions on December 18, a written stipulation between the parties dated December 3 was filed in open court. In the preamble to the stipulation it was recited that a number of witnesses

---

[2]This was the courthouse for the formerly existing Third Circuit which included the districts of Kohala, Kona and Kau. By S.L. 1943, Act 141, the Fourth Circuit Court was abolished and the entire Island of Hawaii became the Third Circuit with its court in Hilo.

resided in the Third Circuit and that the court had made arrangements to take the jury to Kona to hear their testimony and to view the premises where the injury was alleged to have occurred. The preamble also recited that while "no power is provided by statute for the Circuit Court of the First Circuit to hold hearings within the boundaries of the Third Circuit," in any action filed in the First Circuit, the parties were in agreement that such might be done. By the first paragraph of the stipulation following the recitals of the preamble the parties agreed:

"1. That the Circuit Court of the First Judicial Circuit may hold hearings in said action at Kona, Hawaii, Territory of Hawaii, at which witnesses may be heard, evidence adduced and argument presented with the same effect as within the boundaries of the First Judicial Circuit, and for the purpose of such hearings may use the services of the clerk and reporter of the Circuit Court of the First Judicial Circuit, and may have the jury selected for the trial of said action hear the witnesses, the evidence adduced and argument presented, with the same effect as though said hearings had been held within the boundaries of the First Judicial Circuit and said jury had heard said evidence within the boundaries of the First Judicial Circuit, and the power, authority and jurisdiction of the court to hold said hearings in the Third Judicial Circuit at which witnesses are to be heard, evidence adduced and argument presented before the court and jury will not be questioned by the Plaintiff or Defendant and will not be used, asserted or claimed as error by either the Plaintiff or the Defendant as a basis for any appeal of any judgment entered in the above entitled Court and cause, as a basis for a motion for a new trial, or in any other way to attack said proceedings or judgment."

There was clearly no valid ground for changing venue to the Third Circuit. It appears to us that there was even less justification for retaining jurisdiction and moving the court to Kona. The convenience to the five defense witnesses to be accommodated by such a move was greatly outweighed by the inconvenience and expense to be incurred for the transportation of the trial judge, staff and jury to Kona and for their maintenance there for the better part of a week. Drawings and plans admitted in evidence by agreement at the outset of the trial and the testimony of several witnesses fully and adequately explained the relatively simple layout of the physical features of the scene as they existed at the time of the accident. Under the circumstances there was no actual need for, nor purpose to be served by, a view, and none was in order (53 Am. Jur., *Trial*, § 442, pp. 350-351) unless defendant's contention that it was imperative for the jury to see the effect at night of the various lighting combinations of the premises called for one.

The principal factual issue in the case was whether or not a light on a post in the ground next to the step on which the plaintiff stumbled was on. Also directly put in issue by the testimony was whether a light on a table above the step was turned on. The witnesses for the plaintiff testified that neither light was on, while some of those for the defendant testified that both of them were on. Less directly in issue was the condition and illuminating effect of certain lights on the adjacent porch and lanai. The lanai was used as a dance pavilion and during the evening its lighting was dimmed from time to time. We are unable to see how it could have been assumed with the requisite degree of assurance that the proposed demonstrations would aid the jury in resolving these issues.

In this jurisdiction a view is not evidence. Its sole purpose is to permit the trier of the facts to have a better

understanding of the testimony. A view cannot be employed as a basis for judgment. *Von Holt* v. *Izumo Taisha Kyo Mission*, 42 Haw. 671. Under the state of the evidence and considering the admissions relative to the changes made in the premises at the scene of plaintiff's fall, it is reasonable to conclude that the proposed demonstrations at night respecting the step light and other lights in its vicinity would have been more apt to mislead than fairly aid the jury in endeavoring to resolve the conflict between plaintiff's and defendant's witnesses on the adequacy of lighting on the night the plaintiff was injured. The trial judge must have reached a similar conclusion when he eventually denied defendant's application for a night demonstration of lighting on the inn's premises.

Since a night view was not justified there remained no legitimate reason for taking the jury to Kona and the trial court's doing so was manifestly erroneous, even if the power to do so existed. However, the written stipulation filed in open court expressly confirmed plaintiff's previous oral consent to holding sessions in Kona, as noted in the clerk's minutes of September 10, so that, even though such consent may have been given on a Hobson's choice basis, plaintiff is bound by the stipulation unless the trial court lacked the authority to conduct trial of a term case in the Third Circuit and such lack of authority went to its jurisdiction.[3]

The Hawaii Rules of Civil Procedure are not involved in this appeal, it being provided by Rule 82 thereof that "These rules shall not be construed to extend or limit the jurisdiction of the circuit courts or the venue of actions therein." The issue under consideration is to be deter-

---

[3]Plaintiff has honored the stipulation and has asserted no error in that regard but as has been indicated above the court has *sua sponte* raised the jurisdictional issue.

mined solely by application of statutory law. "The courts and judges and the mode of exercising the power are generally matters of statutory regulation." *High Sheriff* v. *Goto,* 16 Haw. 263, 265. "Our Constitution invests the circuit courts with general jurisdiction 'to be defined, limited, and regulated by law.' They are common-law courts, and any extraordinary jurisdiction not in the course of the common law must come from either the Constitution or the statutes." *Montesano Lumber Co.* v. *Portland Iron Works,* 78 Ore. 53, 152 Pac. 244, 249.

Despite appellant's concession in the stipulation filed in the court below that "no power is provided by statute for the Circuit Court of the First Circuit to hold hearings within the boundaries of the Third Circuit, and hear witnesses, have evidence adduced and argument presented, in any action filed in the above entitled Court," it now urges that "Our statutes do not restrict the First Circuit Court to holding sessions within the territorial limits of its circuit." It is our conclusion that appellant was right in the first instance.

Section 215-8, R.L.H. 1955, provides:

"*Terms; held when.* The terms of the circuit courts shall be as follows: In the first circuit, at Honolulu, on the second Monday of January; in the second circuit, at Wailuku, on the second Monday of January; in the third circuit, at Hilo, on the second Wednesday of January; in the fifth circuit, at Lihue, on the second Wednesday of January."

In respect to this section appellant argues: "Section 215-8 prescribes that the term of the First Circuit shall be at Honolulu on the second Monday of January. 'Terms' of court are the periods of time provided by law for holding court as distinguished from the daily sessions or sittings of the court. Black's Law Dictionary, 3rd Ed., page 717. The effect of this statute then is to simply provide

that the general headquarters of the court shall be at Honolulu during its term. There is no provision restricting the place of sessions of the court within the term."

The argument ignores the requirement discussed later in this opinion that sessions in a law or term case must be held during a term of court. With this feature of trial practice recognized it becomes clear that the plain language of the section directs, as far as the First Circuit is concerned, that its terms of court, and therefore all sessions in term cases, "shall be at Honolulu."

By § 215-10 it is provided:

*"Length of term and what cases may be tried when.* The terms of the circuit courts may continue and be held, subject to adjournment from time to time, until the times fixed by law for the commencement of their next terms respectively; provided that Sundays and legal holidays shall be excepted; provided, further, that no trial of any contested term civil case shall be commenced in July or August, except that during such months, with the consent of both parties, the circuit courts may commence and try any civil case; provided, further, that the circuit court of the second circuit shall hold sessions on the island of Molokai and the circuit court of the third circuit shall hold sessions at Kailua and North Kohala at least twice in each year, and, shall hold additional sessions at such places or other places within their respective circuits as often as the respective circuit judges deem such sessions to be essential to the promotion of justice, for the trial of such cases as do not require a jury, and, that no grand jury shall be summoned for such sessions."

In connection with this section appellant argues that the last proviso thereof "does not govern the First Circuit Court, and the sessions of the First Circuit Court are unrestricted by any other statute."

In our view the express grant in the proviso of authority to the Second and Third Circuits to hold sessions of court other than at the county seats, designated in § 215-8, without a similar grant of authority to the First and Fifth Circuits, in itself tends to show a legislative intent that the regular sessions of the latter circuits shall be held at Honolulu and Lihue respectively, as provided by § 215-8. Also, the express mandate in the proviso that the Second and Third Circuits shall hold additional sessions of court at places other than those named in §§ 215-8 and 215-10, being limited as it is to "the trial of such cases as do not require a jury," tends strongly to evidence the legislative understanding that a jury case may be tried only at a place named for the holding of sessions of court. Further, the argument that the authority of the First Circuit to hold sessions is unrestricted by any other statute fails to take into consideration the effect of § 215-1, which defines the territorial extent of the four existing judicial circuits in this jurisdiction as follows:

*"Judicial circuits.* The Territory is divided into four judicial circuits, as follows:

"(a) The first judicial circuit is the island of Oahu and all other islands belonging to the Territory not hereinafter mentioned, and the district of Kalawao on the island of Molokai;

"(b) The second judicial circuit includes the islands of Maui, Molokai (except the Kalawao district), Lanai, Kahoolawe and Molokini;

"(c) The third judicial circuit is the island of Hawaii;

"(d) The fifth judicial circuit includes the islands of Kauai and Niihau."

The obvious purpose of this section is to restrict the exercise of judicial power by each of the four circuit courts

to the territorial limits prescribed for it. Applicable in this connection is the language of the court in *Click* v. *Click*, 98 W. Va. 419, 127 S.E. 194, where, in respect to a judicial system under which the state was similarly divided into circuits, the West Virginia court states, at p. 196:

"* * * we see the Constitution conferred the same authority and the same powers alike on all the circuit judges of the several circuits. One circuit judge has exactly the same general powers and authority as another. No one will contend, however, that it was the intention of the Constitution that circuit judges should exercise their authority and powers indiscriminately all over the state. Such an hypothesis is disposed of at once by the fact that the Constitution required the formation of circuits, the election of a judge by the voters of each circuit, and the residence of the judge during his term of office within his circuit. By the very act of dividing the state into circuits, with the provisions aforesaid, as to the election and residence of a judge, the Constitution clearly contemplated territorial limitations upon each circuit judge. If not, why the circuits?"

The universally recognized general principle applicable here is also well stated in the language quoted in *Primos Chemical Co.* v. *Fulton Steel Corporation* (N.D.N.Y.), 254 Fed. 454, at p. 465, as follows:

"A court created within and for a particular territory is bounded in the exercise of its power by the limits of such territory. It matters not whether it be a kingdom, a state, a county, or a city, or other local district. If it be the former, it is necessarily bounded and limited by the sovereignty of the government itself, which cannot be extraterritorial; if the latter, then the judicial interpretation is that the sovereign has

chosen to assign this special limit, short of his general authority."

Consistently with the foregoing, appellant's proposal that our statutory law does not restrict the First Circuit Court from migrating to another circuit to try a term case pending in the First Circuit is rejected.

This brings us to the crucial question of whether such lack of authority was a mere irregularity which the parties by consent could waive or whether it so went to the court's jurisdiction as to render the trial and judgment in this case void.

If the lack of statutory authority affected the court's jurisdiction then the usurpation of power by the court in going to Kona could not be remedied by the agreement of the parties to overlook the deviation. It is fundamental that jurisdiction may not be conferred by consent of the parties. *Kim Poo Kum* v. *Sugiyama,* 33 Haw. 545, 555; *Martello* v. *Martello,* 19 Haw. 243, 244; *Kapiolani Estate* v. *E. Peck & Co.,* 14 Haw. 580, 583; *Tong On* v. *Tai Kee,* 11 Haw. 424, 427. Further, the lack of jurisdiction may be questioned at any stage of the case. If the parties do not raise the question the court, on its own motion, will. *Meyer* v. *Territory,* 36 Haw. 75, 78; *Francone* v. *McClay,* 40 Haw. 475, 477; *Territory* v. *Santos,* 42 Haw. 102, 108.

There is no case in point in this jurisdiction nor do we believe there is any exact precedent to be found in the decisions of other jurisdictions. Holdings in other jurisdictions which bear on the question appear to be in conflict, as may be seen from a perusal of the annotation entitled "Place of holding sessions of trial court as affecting validity of its proceedings," in 43 A.L.R., pp. 1516-1561. See also 14 Am. Jur., *Courts,* § 37, p. 269.

The beginning of our judiciary can be traced back to before 1840. Its early development was gradual and largely without the aid of statute, being in many respects

similar to the evolution of the English judiciary. The first comprehensive legislation covering the judicial system with any degree of completeness was the act of 1847, which recognized the existence of the early separate island courts and divided jurisdiction between the courts and judges at chambers. It was however the Judiciary Act of 1892 which reorganized the courts and provided the full pattern, subsequently adopted by the Organic Act, for our judicial system. This history of the development of our judiciary is covered in some detail in *Carter* v. *2d Judge, 1st Circuit*, 16 Haw. 242.

Section 29 of the Judiciary Act of 1892 divided the Hawaiian Kingdom into five judicial circuits corresponding to the five which existed prior to the amalgamation of the Third and Fourth Circuits by S.L. 1943, Act. 141. Under § 31 of the 1892 act the regular terms for each of the five circuits were specified for a particular place and at designated times, as, for instance, "In the First Circuit, at Honolulu, on the first Mondays of February, May, August and November." By § 33 of the act it was provided that the regular terms of all circuit courts "may be continued and held from the opening thereof, respectively, until and including the twenty-fourth day thereafter, Sundays and legal holidays excepted."

Consideration of this history of the development of our judicial system permits a better understanding and evaluation of the close correlation between the statutorily prescribed time and place of trial—strict adherence to each of which has been considered in many common law jurisdictions equally indispensable to the validity of a court's proceedings in the trial of term cases.[4] "There is no firmer principle established in our jurisprudence than that courts

---

[4]R.L.H. 1955, § 1-1 (first adopted by § 5 of the Judiciary Act of 1892) dictates that we consider the common law. *Territory* v. *Chee Siu*, 25 Haw. 814, 815; *Ah Leong* v. *Ah Leong*, 29 Haw. 770, 799; *Sapienza* v. *Paul*, 42 Haw. 14, 22.

can only exercise jurisdiction to hear and determine rights at the time and place fixed by the statutes or rules of court authorized by the statutes." *State* v. *Orangefield Independent School District* (Tex. Civ. App.), 345 S.W.2d 823, 824. "A court held either at a time or place not authorized by law is held to be no court; from which it would follow that its proceedings are of no legal force whatever." *Coulter* v. *County of Routt,* 9 Colo. 258, 11 Pac. 199, 203.

It has been noted that our present law (§ 215-10) calls for a continuing term for all circuits.[5] Judges and attorneys today need not be concerned about when trial or proceedings in a law case can legally be held. However, when our statutes limited the duration of the regular terms of the circuit courts to twenty-four days, it was essential that proper consideration be given to the time element. See *e.g., Kapiolani Estate* v. *E. Peck & Co.,* 14 Haw. 580; *Territory* v. *Ah On,* 17 Haw. 19; *Republic* v. *Kapea,* 11 Haw. 293; *Hamano* v. *Miyake,* 24 Haw. 12. A circuit court's authority to try a law case was then strictly limited to the duration of a particular term, either regular or special. It had no jurisdiction to hold court in a term matter in vacation and if it did so the proceedings were void. "Terms of court must be held at the time lawfully fixed therefor, and all proceedings had at a term held at any other time than as legally provided are void, * * *." *Thompson* v. *Commonwealth,* 266 Ky. 529, 99 S.W.2d 705, 706. See 14 Am. Jur., *Courts,* § 25, p. 264.

In view of the inseparable relationship between time and place of trial in term matters it logically follows, and sound authority bears out, that, proceedings held in a law case at a place beyond the boundaries of the circuit are as much a nullity as proceedings conducted other than dur-

---

[5]The change to a continuing term was made for the First and Fourth Circuits by Act 32, S.L. 1903; for the Fifth Circuit by Act 49, S.L. 1917; and for the Second Circuit and the original Third Circuit by Act 77, S.L. 1921.

ing a term would have been when, under the former law, regular terms of the circuit courts were intermittent and limited to twenty-four days.

When we later consider the authorities relied on by appellant for its contention that the lower court's holding trial sessions in the Third Circuit was a mere irregularity, it will be seen that some courts have held no violation of jurisdiction occurred when the extraterritorial hearing was in a nonjury case or where testimony was taken as an incident to a view at a place beyond the territorial limits of the court.

We have been cited but one case, *Miller* v. *Ervin,* 192 Miss. 712, 6 So. 2d 910, discussed below, in which the issue arose where sessions of the trial proper, in a jury case, were held beyond the boundaries of the court's general jurisdiction. We believe this apparent lack of close precedent emphasizes that the trial court's action in going beyond the boundaries of the First Circuit to hold trial sessions so violated traditionally understood and generally accepted fundamental principles as to render the trial void. The following authorities supporting such a conclusion are, we think, applicable to this case.

*Isbill* v. *Stovall* (Tex. Civ. App.), 92 S.W.2d 1067, involved injunction and mandamus proceedings in which hearings were held, without objection of the parties, outside the county of the trial court. In applying constitutional provisions comparable to R.L.H. 1955, §§ 215-1 and 215-2, the court states at pp. 1070, 1072:

> "The Constitution itself fixes the place of holding regular terms of the district court at the county seat of the county. Const. art. 5, § 7. By provision of the Legislature, 'All terms of the district * * * court shall be held at the county seat.' R.S.1925, art. 1602. * * *
>
> "                    * * * * *
>
> "We have no hesitancy in saying, under the princi-

ples and authorities hereinbefore referred to, that the district court of Jones county has no jurisdiction to try a civil suit and render final judgment therein while sitting in a county other than Jones county. The question involved is one of judicial power, and it is an elementary and axiomatic principle of law that consent or agreement cannot supply a lack of jurisdiction in the sense of an absence of judicial power to act. * * *

"* * * The district court of Jones county could not in term time have tried the case outside of Jones county. This proposition is incontrovertibly established by the decisions hereinbefore cited, * * *."

The holding in *Eichoff* v. *Caldwell*, 51 Okla. 217, 151 Pac. 860, appears at p. 861, as follows:

"There are many assignments of error, but the sole ground for reversal of the judgment urged by defendants in their brief is:

" 'That inasmuch as said cause was pending in the district court of Canadian county, that the order made by Judge Carney, the presiding judge of said court while sitting in Oklahoma county, and the hearing of said motion in a place other than Canadian county, is and was an absolute nullity, and the whole proceeding is and was void, and the consent of the parties did not and could not confer jurisdiction upon Judge Carney as judge of the district court of Canadian county to hear or pass upon the same in Oklahoma county.'

"It is perhaps proper to state that counsel now representing defendants had no connection with the proceedings below. Defendants are correct in their contention that, notwithstanding the foregoing agreement, apparently relied on by all parties, the judge being without authority to hear and determine the motion to vacate the judgment of the court, and it being legally impossible for the district court of Canadian county to

be held at a place outside and away from the county seat of that county, such proceeding is a nullity."

In another Oklahoma case, *City of Clinton* v. *Cornell,* 191 Okla. 600, 132 P.2d 340, it is stated at p. 343:

"There is some indication that the plaintiff in error, through an attorney not appearing herein, agreed not to raise the question. The constitution's mandate cannot be set aside by agreement. Jurisdiction over the person of a litigant may be conferred by consent but questions relating to jurisdiction over the subject matter or, as in this case, the very existence of the court at the time and place cannot be created by agreement."

Other cases which support the view that a court lacks jurisdiction to hold proceedings beyond its territorial limits are: *Knight* v. *Younkin,* 61 Idaho 612, 105 P.2d 456; *Tanner* v. *Beverly Country Club,* 217 La. 1043, 47 So. 2d 905; *Sinclair Refining Co.* v. *Burkholder,* 193 Ark. 62, 97 S.W.2d 925; *Howell* v. *Van Houten,* 227 Ark. 84, 296 S.W.2d 428; *Newman* v. *Wright,* 126 W. Va. 502, 29 S.E.2d 155; *Goodman* v. *Little,* 96 Ga. App. 110, 99 S.E.2d 517; *Francis* v. *Wells,* 4 Colo. 274.

The authorities offered by appellant for a rule contrary to that announced and followed in the above cases are, in our opinion, either inapplicable or the reasoning thereof unpersuasive. In the cases cited by appellant which have upheld testimony taken beyond the court's boundaries the attending circumstances were very much circumscribed, in fact so much so that we are strongly inclined to believe that these same courts would have reached a different result if they had been presented with the factual situation of this case. To show the contrasting backgrounds, we are reviewing appellant's authorities at some length.

Two California cases relied on are *Union Oil Co. of California* v. *Reconstruction Oil Co.,* 20 Cal. App. 2d 170, 66 P.2d 1215, and *Desert Turf Club* v. *Board of Supervi-*

*sors,* 141 Cal. App. 2d 446, 296 P.2d 882.

The *Union Oil Company* case was an injunction proceeding in the trial of which the court went into another county to inspect apparatus used in making a survey of a well and to take the testimony of several witnesses who had operated the apparatus in the survey. After judgment, defendants contended that the irregularity was jurisdictional. The appellate court stated that the point raised was novel but that the nearest factual approach to the situation presented was *People* v. *Pompa,* 192 Cal. 412, 221 Pac. 198. Based primarily on that decision the appellate court held, at p. 1221: "This acquiesence and concurrence in such claimed irregularities, in our opinion, constitute a waiver of the right now to raise objection to them. It may further be observed with respect to the evidence which was received in Fullerton that it stands uncontradicted and, so far as appears, no prejudice resulted to appellants from its reception."

In *People* v. *Pompa,* the court and some of the jurors, during a view, asked questions of the person appointed by the court to point out particular things at the scene of the offense. Defendant was aware of this but made no objection until the view had been completed. His counsel also participated in the questioning. After conviction he unsuccessfully moved for a new trial because of the claimed irregularity of the testimony given by the shower. On appeal, it was held that any irregularity in connection with the view had been waived. The scene visited was within the territorial jurisdictional limits of the trial court.

The holding in *Union Oil Co. of California* v. *Reconstruction Oil Co.* undoubtedly tends to support defendant's contention that no jurisdictional irregularity is involved here. The case probably is the strongest precedent cited in that respect. However, we are not persuaded by it. In the first place we think the fact that the case was a

chambers matter and not a term case is a distinction that cannot be ignored. Further we do not think the analogy drawn with *People* v. *Pompa* is convincing since in that case the court did not go outside its own boundaries and the irregularity complained of occurred incidentally to a view which was clearly within the power of the court to order.

In the *Desert Turf Club* case the testimony of witnesses in the trial of a mandamus proceeding pending in the Superior Court of Riverside County was taken before an assigned judge in Santa Barbara County with the tacit or express consent of the parties. The appellate court considered the appeal on the merits, and reversed. From this appellant deduces, "the reviewing court noted that the trial court had conducted several trial sessions in the wrong county, but treated the case as if the hearings were properly held." The inference might have been warranted if the California court had not spoken out on the matter, at p. 888 of its opinion, as follows: "Appellant does not raise any point as to jurisdiction or error in this respect. But this court cannot let pass unnoticed the impropriety involved in this irregular procedure. The sessions of the superior court of a given county, under the law, must be held in that county, Government Code, §§ 69741, 68099; 13 Cal.Jur.2d, *'Courts'*, § 41." It is not apparent from the opinion why the court, having noted the jurisdictional issue, did not resolve it before considering the appeal on its merits.

Another case relied on is *Gaster* v. *Thomas*, 188 N.C. 346, 124 S.E. 609. In it the appellate court held, at p. 610: "It is well settled in this state that the court below has no jurisdiction to hear and determine a motion to set aside a verdict and judgment of the superior court except in the county where the judgment was rendered, unless by consent. Godwin v. Monds, 101 N. C. 354, 7 S. E. 793, Cahoon

v. *Brinkley,* 176 N. C. 5, 96 S. E. 650." It is worth noting, we think, that in one of the precedents relied on, *Cahoon* v. *Brinkley,* the North Carolina court stated, at p. 651 of the opinion: "The defect was jurisdictional, and the motion [to set aside a default] should have been dismissed; for in this case the plaintiff not only did not consent, but asked to dismiss and excepted." We are unable to reconcile the North Carolina court's express recognition that the irregularity of an extraterritorial hearing was jurisdictional with the holding that such a defect could be waived by consent of the parties.

*Blain* v. *Manning,* 36 Ill. App. 214, also relied on by appellant, was a jury-waived term case which was partially heard by the court in Du Page County where the suit was filed and then continued by stipulation for hearing of the remainder of the evidence at chambers. This evidence was taken in Chicago in another county. As appellant notes, the appellate court found no jurisdictional question. There was no jury in the case, and it is further distinguishable by reason of the fact that the transcript of the testimony taken at Chicago was later admitted, without objection, in evidence when the trial was resumed in Du Page County. The appellate court stated (at p. 217) : "No question of jurisdiction can arise, as the cause was finally heard in open court."

*Miller* v. *Ervin, supra* (192 Miss. 712, 6 So. 2d 910), was an action pending in Clay County for damages for overflow alleged to have been caused by the digging of a ditch by a railroad. Over objection of the plaintiff the jury was taken for a view of the ditch in Londes County. Testimony was taken of witnesses for both plaintiff and defendant at the site. The court found no substantial conflict in the testimony and directed a verdict for the defendant. A comprehensive Mississippi statute governed the taking of a view. The statute provided that at a view the court

would remain in session and that it had power to compel the attendance of witnesses and to hear their testimony at the scene. The issue raised was confined to the legality of taking a view in a county other than that in which the case was being tried. The Mississippi appellate court referred to and analyzed several conflicting decisions from other jurisdictions, but stated it was pretermitting any decision on the point because of its conclusion that under the facts and circumstances of the case what the jury observed would not have indicated or suggested to it that a better means than that employed by the defendant could have been used in constructing the ditch. No mention was made in the opinion respecting the testimony of the witnesses taken at the scene. At p. 914 of the opinion it is stated: "* * * A different situation is presented than would have been the case where an issue of fact was properly submitted to the jury and the losing party should complain that the jury may have been influenced in its finding by evidence illegally taken. Where the entire evidence presented no disputed issue of fact for the determination of the jury we are unable to say that the plaintiff was prejudiced by what the jury saw." Obviously this case does not support appellant's contention.

Appellant cites *Brinkerhoff-Faris Trust & Savings Co. v. Gaskill*, 356 Mo. 61, 201 S.W.2d 274, and other cases, for the rule that, a hearing before a *de facto* court is not subject to collateral attack. No issue can be taken with the holdings of the cited cases. *Territory* v. *Mattoon*, 21 Haw. 672, and *Wilder* v. *Colburn*, 21 Haw. 701. These authorities have no application here.

Upon analysis and consideration of all of the above authorities it is our conclusion that the holdings in *Isbill* v. *Stovall, supra,* and *Eichoff* v. *Caldwell, supra,* to the effect that in the absence of enabling provisions a court is without extraterritorial jurisdiction are sound and are

applicable to this case. It is our opinion therefore that the trial court's lack of authority to hold sessions in Kona was jurisdictional and that the agreement of the parties to waive the defect was ineffectual. Consequently the trial and judgment in this case are nullities.

While not decisive of the issue, the above conclusion is compatible with other provisions of our statutes, and particularly with § 215-19 which in pertinent part provides:

> "*At chambers, hearings without circuit.* Upon consent of all the parties who have appeared in any equity, probate or ex parte proceeding of any nature before any circuit judge in chambers, the circuit judge may in his discretion hold hearings in such proceeding, at which witnesses may be heard and evidence adduced and argument presented, at any place within the Territory without the boundaries of his circuit with the same effect as within the boundaries of his circuit, * * *."

The enactment of this section by Act 243, S.L. 1941, can be taken, at least, as evidencing a legislative understanding that previously a circuit judge at chambers was probably without power, even with consent of the parties, to hold hearings beyond the boundaries of his circuit. Such understanding would necessarily also apply with respect to the limited power of a circuit court. And since the grant of authority to hold hearings and receive evidence beyond the boundaries of the circuit with consent of the parties was limited by the act to circuit judges at chambers, we believe it can be fairly implied under the maxim *expressio unius est exclusio alterius* that the legislature did not intend to grant similar authority to a circuit court to hold sessions and receive evidence beyond the boundaries of its circuit in a term case.

One further point made by appellant requires but passing comment. By the second paragraph of the stipulation

filed in the case the parties agreed, as follows:

"2. To remove any question of the power, right and authority of the parties hereto to stipulate that the Circuit Court of the First Judicial Circuit may hold hearings in the Third Judicial Circuit as set forth in the preceding paragraph 1, and in the event the foregoing stipulation may be void, it is hereby stipulated by and between the Plaintiff and Defendant as a further stipulation that the testimony of the witnesses heard at such hearings held at Kona, Hawaii, T. H., shall be and shall be deemed to be a deposition of the testimony of each of said witnesses taken under the Hawaii Rules of Civil Procedure, and each of the witnesses called shall be and shall be deemed to be the witness of the party calling the witness, and the Plaintiff and Defendant hereby waive the reading before the jury of the testimony as heard by the jury within the boundaries of the Third Judicial Circuit."

Appellant urges that "The provision of the stipulation providing that the proceedings be treated as deposition proceedings cures any defect."

The only authority cited in support of the contention is *In re Peters' Estate*, 116 Vt. 32, 69 A.2d 281, in which case it was held reversible error to allow the transcript of the testimony of a sick witness, taken over objection at his home, during recess, to be read to the jury. Reliance on the case is predicated on the fact that in its opinion the Vermont court held that the formalities of a deposition could have been waived by agreement of the parties and the procedure thus made effective. We do not disagree with this dictum. However, there is no possible basis for the application of it here. And we can add that we view *Blain* v. *Manning, supra,* in the same way. The implication that what was actually done in the trial of this case could in some way or another be taken as a submission to

the jury on deposition of the testimony of the witnesses heard in Kona defies the record. The jurors had heard the witnesses "live" and necessarily received a different impression than they would have received from depositions. The course of the trial and the jury's reception of the testimony was not in any manner changed by reason of the parties' saying and agreeing that the testimony of the Kona witnesses should be deemed submitted to the jury on deposition *sub silentio*.

The second paragraph of the stipulation is obviously nothing more than a fictitious device composed by the parties in an attempt to obviate the consequences of a holding that the course of action they agreed to follow by the first paragraph of the stipulation was void. As has been previously shown, it is not within the competence of the parties to bind the court with such an agreement.

For the reasons stated herein, the order appealed from must be and is affirmed. The cause is remanded for a new trial.

*Dwight M. Rush* (*Henshaw, Conroy & Hamilton* of counsel) for appellant.

*John E. Parks, Ton Seek Pai* and *Hyman M. Greenstein* for appellee.